UNITED STATES, Appellee

v

MELVIN F. CUMMINS, Master Sergeant,
U. S. Air Force, Appellant

9 USCMA 669, 26 CMR 449

670

No. 10,991

Decided October 3, 1958

*Miss Madeline E. DeFina* and *Captain Norman J. Nelson* argued the cause for Appellant, Accused. With them on the brief was *Lieutenant Colonel Ellis L. Gottlieb.*

*Captain John W. Fahrney* argued the cause for Appellee, United States. With him on the brief was *Lieutenant Colonel Robert W. Michels.*

### Opinion of the Court

ROBERT E. QUINN, Chief Judge:

The accused stands convicted of 16 specifications of larceny by check, 3 specifications of dishonorable failure to pay debts, and one charge of forgery. Among other things he contends that his conviction on one of the check offenses cannot be supported. His attack takes two forms: (1) That since the check he gave to obtain money was postdated, it cannot be the basis for a larceny by false pretense, in violation of Article 121, Uniform Code of Military Justice, 10 USC § 921; and (2) that the testimony of the principal prosecution witness in connection with the offense is incredible. Neither argument has merit.

Article 121 provides, in part, that a person commits larceny if he wrongfully obtains "by any means" money or other property from another with the intent "to deprive or defraud" that person

**671**

of its use and benefit. Included within the definition is the offense formerly described as false pretenses. United States v Buck, 3 USCMA 341, 12 CMR 97. If the elements of that offense are otherwise established, the fact that the check used in the pretense was postdated is not a ground to set aside the conviction. Lesser v People, 73 NY 78; State v De Nicola, 163 Ohio St 140, 126 NE2d 62.

The date on the check is not controlling. It can shed light on the accused's intention in the transaction, but it is the intention, not the date on the check, which the court-martial must determine. And, if from all the circumstances it finds beyond a reasonable doubt the accused knew no funds were available for payment, and, in fact, none would be available at the time provided, the court-martial is justified in concluding the accused intended permanently to deprive the victim of the proceeds of the check. State cases which appear to reach a different result are based upon the wording of particular statutes. The act prohibited in most instances is the failure at the time of the issuance of the check to have sufficient funds to meet it on presentment. In the absence of a collateral statement by the drawer, the postdated check is considered a mere promise to pay in the future and, therefore, not within the contemplation of the statute. Annotation, 35 ALR 375, at 384, supplemented by 95 ALR 486, at 496; 168 ALR 833; see also United States v Turner [CGCM 9863], 23 CMR 674. What we are considering here is the misrepresentation of an existing intention. In United States v Redenius, 4 USCMA 161, 166, 15 CMR 161, we pointed out that "present intent may be regarded as a fact." Although the courts are not in complete agreement on the rule, in our opinion, a misrepresentation of a present state of mind is like the misrepresentation of any other existing material fact, and is sufficient to show fraud. Elk Refining Co. v Daniel, 199 F2d 479 (CA 4th Cir) (1952); Blakeslee v Wallace, 45 F2d 347 (CA 6th Cir) (1930); see also, United States v Stewart [ACM 11442], 21 CMR 689; contra, Stewart-Warner Corp. v Remco, 205 F2d 583 (CA 7th

Cir) (1953) (decided under Illinois law). See People v Ashley, 42 Cal2d 246, 267 P2d 271, for a review of the criminal cases. We hold, therefore, that a postdated check may be used as a means of committing larceny by false pretense under Article 121 of the Uniform Code. United States v Stewart, supra.

As far as the testimony of the prosecution witness is concerned, we note that that there is some inconsistency in his testimony in regard to the date of the transaction, and that there are some equivocal statements respecting its nature. At the trial, defense counsel pressed hard on both points, and each was considered at length in the post-trial review. At the trial and in the review, the essentials of the witness's testimony were believed to establish the offense charged. After careful review of the record, we cannot say the testimony is so self-contradictory or so inconsistent as to be unbelievable as a matter of law. Cf. United States v Sharp, 5 USCMA 580, 18 CMR 204.

Moving to Charge II and its specifications, the accused alleges that the evidence is insufficient to support the findings of guilty, and that the instructions are prejudicially erroneous.

Specification 1 of Charge II alleges that the accused dishonorably failed to pay certain installments on a debt due to the International Bank of Washington, D. C. On August 24, 1956, the accused borrowed $550 from the bank on what is described as a "time installment" plan. At the time of the transaction, the accused presented a signed Department of Defense form authorizing an allotment to the bank of $70 per month, effective in October, to show "he had actually registered an allotment" in the bank's favor in accordance with the installment plan. He also gave the bank a certificate from his detachment commander representing that the accused had presented to him an application form for an allotment to the bank. The completed form showed the accused had an existing allotment for $50 for the Colgate Credit Union, but that it was to be discontinued in September. The first installment on the allotment

to the bank was due in November, but it was never received. In that month, and again in December, the bank wrote to the accused regarding its failure to receive payment, and requested him to "check with Finance." The accused did not acknowledge the first letter and apparently did not reply to the second. In the meantime, however, the accused's application for allotment to the bank had been disapproved by the Finance Office because of an outstanding tax lien against his pay. A second application to discontinue the allotment to the Colgate Credit Union was approved in October. During this period, the accused issued the worthless checks which constitute the larceny specifications under Charge I.

Considering the basis upon which the bank had made the loan to the accused, his failure to apprise them ▆▆▆▆▆▆▆ of the disapproval of the allotment, his failure to apply the funds released by discontinuance of the Colgate allotment to the bank loan, as contemplated by the terms of the loan, his disregard of the bank's letters and finally his other irregular financial dealings, there is ample evidence to support the court-martial's finding that the accused's failure to pay the installments charged was dishonorable.

In specification 2 of Charge II the accused is charged with a dishonorable failure to pay installments ▆▆▆▆▆▆▆ of a debt owing to the Air Research Development Command Credit Union which were due between August 30 and December 30, 1956. The evidence shows that in applying for the loan the accused did not disclose other existing loans, as he was required to do by the application. No payment was ever made on the loan. A letter from the credit union requesting payment was disregarded by the accused. The misstatement of fact in the loan application, the accused's other contemporaneous financial transactions, and his failure to acknowledge the request for payment provide enough evidence to support the finding of dishonor in the nonpayment of the installments charged.

The final specification under Charge II of which the accused was convicted concerns a loan from the GAC Finance Corp. of Baltimore, Maryland. The evidence shows that the accused had an account with that firm as early as 1953. Payments on the initial loan were irregular but satisfactory. In November 1955, a new loan was made to the accused. Part of the proceeds of this loan were used to pay off the 1953 loan. The first installment of $38 on the superseding loan was due in December 1955, but payment was not made until February 1956. Payment was made by check, but the check was "returned." It was redeposited and again returned in March, but on that occasion $38 was paid in cash. In April and May, payments were made by money order in the respective amounts of $41.24 and $41.34. On June 6 a payment of $42.76 was made by check. When the check was returned for insufficient funds, payment was made by money order. The October, November, and December installments were not paid at the regular time. But in October the accused paid an "extension fee" and in November remitted $38. On January 2, 1957, he paid another "extension fee" and in February made a payment which "took care" of his obligation for November 1956. The loan manager of the firm testified that during the "long period of time" the accused had been doing business with his firm the acount was "classified as a satisfactory account."

There are situations in the law when the personal opinion of the victim of the accused's conduct does not determine the criminal nature of the accused's act. Generally, a private code cannot limit the operation or the effect of the public law. Cf. United States v Berry, 6 USCMA 609, 20 CMR 325. In our opinion, however, this is not one of those situations.

A dishonorable failure to pay one's just debt is made punishable under the Uniform Code because ▆▆▆▆▆▆▆ such conduct brings discredit upon the armed services. United States v Kirksey, 6 USCMA 556, 20 CMR 272. The public nature of the offense, however, has its source in a private relationship. If the private relationship is entirely

satisfactory to the parties, there is no ill effect upon the civilian or military community. In other words, if the creditor is satisfied with the conduct of his debtor, there is no basis for concluding that the conduct of the debtor discredits the miltary services. In short, there is just no "failure" to pay. We conclude, therefore, the evidence is insufficient to support the findings of guilty of specification 4, Charge II.

Instructing on the principles of law regarding the offense of dishonorable failure to pay a debt, the law officer correctly advised the court-martial that a failure to pay through carelessness did not constitute the offense, but that the "essence of the offense is a dishonorable failure which connotes bad faith or gross indifference." See United States v Kirksey, supra, page 560. He then went on to instruct:

"However, an unexplained failure to pay for an unconscionable period of time; the contracting of a debt under false representation; false promises or willful evasion may constitute dishonorable conduct.

"However, the court may look at the entire course of conduct of the accused and while certain acts standing alone may not be particularly convincing, if the entire course of conduct of the accused during the period shows that money was borrowed from one source in order to pay to another and then no payment was made on such loans, or if the evidence shows a general failure to pay indebtedness with no evidence of unusual expenditures and a failure to honor an express or implied promise to pay at a certain time, it may be found to be dishonorable."

The accused contends that in four separate particulars the instructions are prejudicially misleading. His first argument centers on the statement that "an unexplained failure to pay for an unconscionable period of time . . . may constitute dishonorable conduct." The initial problem raised by the argument is whether the challenged statement is, as the Government contends, merely one of an enumeration of evidentiary matters which the court-martial could consider as establishing dishonorable conduct, or whether each item constitutes a separate basis upon which the court-martial was permitted to return a finding of guilty. See United States v Farris, 9 USCMA 499, 26 CMR 279. Since the reference to the accused's "entire" conduct comes after the enumeration, and it is itself separately explained by examples different from those in the enumeration, there is at least a fair risk that the court-martial understood each element in the enumeration to be a permissible basis for a finding of dishonor. From that standpoint, the accused's contention has merit.

The mere failure to pay a debt does not show that the nonpayment is dishonorable. The fact that no payment has been made for a long time may have probative value, but it does not itself establish that the failure to pay is dishonorable. The instruction, however, makes the mere lapse of time the equivalent of bad faith or willful evasiveness or gross indifference. In fact, it may merely indicate simple negligence. Other circumstances, therefore, are required to show that the length of time is attributable to guilty rather than innocent causes. Consequently, the instruction is erroneous. Cf. United States v Hairston, 9 USCMA 554, 26 CMR 334. Since several monthly installments were allegedly not paid at the time payment was ordinarily to be made, the court-martial could have based its findings of guilty on the length of time alone. A finding based on that single equivocal circumstance cannot stand. United States v Cothern, 8 USCMA 158, 23 CMR 382. In view of our conclusion in regard to this part of the instruction, we need not consider the other parts attacked by the accused.

The accused's next claim of error concerns the argument of trial counsel on the sentence. Trial counsel opened his argument with the statement that it was not a "pleasant thing" to ask for a sentence which would wipe out seventeen and one-half years of the accused's life (as represented by his period of military service). He went on to say

674

it was the duty of the court to adjudge a sentence which would be appropriate in the light of three purposes: (1) to teach the accused to obey the law; (2) to warn others against disobeying the law; (3) to remove the accused from society "until he is fit again to rejoin it." Trial counsel again reviewed the nature of the offenses, and considered what would be an appropriate sentence for them. His argument is as follows:

"Now, what is an appropriate sentence for those offenses? Certainly not the maximum. Certainly the accused must be given credit for eighteen years of good service. It is good so far as I have any knowledge and it certainly must be good or he wouldn't stand before you as a master sergeant. He certainly must be given credit for that time, and certainly a maximum sentence would not be appropriate. On the other hand, certainly the only appropriate sentence is a sentence of dishonorable discharge on general principles. I do not think that the service could ever again use a man who had committed this number of offenses involving moral turpitude against the service.

"I invite your attention to page 122 of the Manual where it discusses at some length the basis of the sentence. It points out in paragraph 76 at the bottom of page 122:

'Dishonorable discharge should be reserved for those who should be separated under conditions of dishonor, after having been convicted of offenses usually recognized by the civil law as felonies, or of offenses of a military nature requiring severe punishment.'

"I say to you, gentlemen, you have convicted him of a number of felonies and of serious military offenses. Of course, with dishonorable discharge, you should adjudge total forfeiture. That should always follow, unless there is some very peculiar reason why it shouldn't.

"Now, gentlemen, in the case of a man of this sort, under those circumstances, a loss of eighteen years out of his life is serious punishment in and of itself—far more serious than it would be to a basic airman who is losing only a year or two out of his life. But it still is not in itself enough punishment.

"Again I invite your attention to paragraph 5, page 122, of the Manual:

'The imposition by courts-martial of inadequate sentences upon military persons convicted of crimes which are punishable by the civil courts tends to bring the armed forces into disrepute as lacking in respect for the criminal laws of the land.'

Now, gentlemen, that is exactly what you have convicted this man of. I certainly have no suggestion as to what the period of confinement should be. You gentlemen, by your very careful study of the specifications, have shown your conscientiousness and your earnestness. You were chosen as members of this court for your good judgment. I would make no recommendation to you. I do point out that the maximum period of confinement is a lengthy one. The sentence of confinement should be something more than a mere token or fraction of that. To do so would be to show an inadequate respect for the laws of the land. On the other hand, as I have said before, it is not a question for a maximum sentence. I have no recommendation to make other than to ask that the accused be adjudged a dishonorable discharge, total forfeiture and a substantial period of confinement."

It is contended that trial counsel's references to the Manual for Courts-Martial, United States, 1951, constitute command control. See United States v Fowle, 7 USCMA 349, 22 CMR 139; United States v Estrada, 7 USCMA 635, 23 CMR 99. We need not consider whether the Manual provisions prescribe an executive policy which the court-martial would feel constrained to follow. There is no doubt that when considered in the context of trial counsel's argument they are no more than admonitions to impose a sentence ap-

propriate to the accused's case. Trial counsel's argument makes crystal clear that within the limits of the legal maximum the court-martial was free to adjudge any sentence that it desired. We find no prejudice in the references to the Manual.

The final assignment of error is directed to the sufficiency of the post-trial review. The review discussed the evidence in detail and with care. In referring to the specifications of Charge I the review notes it is "common to all . . . that the evidence established beyond a reasonable doubt certain of the required items of proof." These were discussed. The other required items were considered separately and at length. References were made at appropriate times to the convening authority's power to weigh the evidence and determine controverted questions of fact.

A review need not follow a particular sequence of discussion nor use a particular mode of expression. It is sufficient that, when considered as a whole, it includes the essentials for a proper review. United States v Fields, 9 USCMA 70, 25 CMR 332. The review here meets that standard. United States v Murphy, 9 USCMA 316, 26 CMR 96.

From its opinion, it is apparent the board of review gave very careful attention to the determination of an appropriate sentence. Considering that circumstance and the nature of the offenses, the possibility that elimination of the specifications of Charge II would result in further reduction in the sentence is too slight to justify remand of the case to the board of review. See United States v Teitsort, 9 USCMA 322, 26 CMR 102. Accordingly, we affirm the decision of the board of review, except as to Charge II and its specifications. The findings of guilty of Charge II and its specifications are set aside

and those charges are ordered dismissed.

Judge LATIMER concurs in the result.

FERGUSON, Judge (dissenting):

I disagree with the holding on the policy argument by trial counsel and with the refusal to remand this case to the board of review on sentence. Also, I have given careful consideration to the authorities cited on the postdated check issue. That holding appears so foreign to well-established principles of law that I must dissent. The issue, as granted by the Court, was phrased as follows:

"Whether evidence that the check in Specification 1 of Charge I was post dated is sufficient to support the finding of guilty."

This fairly raises the question of sufficiency of the evidence. I interpret the opinion of the majority to mean a postdated check alone may be a false pretense as a matter of law. A search of the record of trial fails to disclose any accompanying promises or declarations. All that is present in the case is the giving of a postdated check, the receipt of money therefor, a failure to have sufficient funds on deposit on the date the check becomes payable, and whatever inferences may properly be drawn from these facts.[1]

It seems that the principal opinion confuses the use of a false pretense with the requirement of an intent to defraud. It states:

". . . it is the intention, not the date on the check, which the court-martial must determine."

Granted, the court-martial must find an intent to defraud. It may be further conceded the date on the check and surrounding circumstances may bear on that intent. However, intent is only one of the elements of a larceny by false pretenses. The requirement of a false

---

[1] This opinion will later show that an implied promise to deposit funds to cover the check may be drawn from the issuance of a postdated check. The testimony of the prosecution witness, while vague, might indicate an express promise to make such a deposit. This would, however, not change the result in any manner.

pretense is exclusive of the intent. And a false pretense is a misrepresentation of a past or existing fact. See, generally, Clark and Marshall, A Treatise on the Law of Crimes, 5th ed, page 466.

Our inquiry then becomes: what representations are made by the giving of a postdated check without more. Most of the cases dealing with postdated checks arise under "worthless check" statutes and results often depend upon the wording of a particular statute. The view has been expressed, however, that a postdated check carries on its face implied notice that there is no money presently on deposit available to meet it. Commonwealth v Massaro, 97 Pa Super 149 (1929). It is simply evidence of indebtedness. This view is supported by logic. See also cases in Annotation, 29 ALR2d 1181. The only other inference which can be drawn from the issuance and acceptance of a postdated check is an implied promise to deposit funds to cover the check before its due date.

This, then, brings us squarely to the issue where the majority departs from precedent. That is on the question whether an intention to do an act in the future is a representation of "existing fact" for purposes of the crime of false pretenses.

The criminal cases cited by the majority do not support its contention that intention is an existing fact. The principal opinion properly cites Lesser v People, 73 NY 78, for the proposition that "if the elements of that offense are otherwise established, the fact that the check used in the pretense was postdated is not a ground to set aside the conviction." In Lesser, however, there was an express representation as to an existing fact, i.e., that the check is now good (but he had dated it the following day because the bank had already closed). That representation was the representation of an existing fact and not any statement as to intention. State v De Nicola, 163 Ohio State 140, 126 NE 2d 62, was not a case of false pretenses but determined simply that a postdated check is a "check" within the meaning of a "bad check" statute. That is not determinative of the issue

here, and on that question, too, there is a split of authority. See 29 ALR 2d 1181, supra. People v Ashley, 42 Cal 2d 246, 267 P 2d 271, sets forth the minority view but there, as in *Lesser*, there were false representations as to existing facts. Justice Schauer, writing the dissent in *Ashley*, said in part:

"I concur in the judgment solely on the ground that *the evidence establishes*, with ample corroboration, *the making by the defendant of false representations as to existing facts*. On that evidence the convictions should be sustained pursuant to long accepted theories of law.

"It is unnecessary on the record to make of this rather simple case a vehicle for the revolutionary holding, contrary to the weight of authority in this state and elsewhere, that a promise to pay or perform at a future date, if unfulfilled, can become the basis for a criminal prosecution on the theory that it was a promise made without a present intention to perform it and that, therefore, whatever of value was received for the promise was property procured by a false representation. Accordingly, I dissent from all that portion of the opinion which discusses and pronounces upon the theories which in my view are extraneous to the proper disposition of any issue actually before us." [Emphasis supplied.]

The rule is well established in most jurisdictions that the criminal offense of obtaining money or other valuable thing by false pretense is not predicable upon the present intention of the accused not to comply with his promises or statements as to his future acts.

Thus the United States Court of Appeals for the Ninth Circuit said in a recent per curiam opinion:

"The trial court took the view that the legislative intent in enacting . . . [Alaska's false pretense statute] was to prohibit the obtaining of property by falsely representing present intentions. This construction . . . is contrary to the weight of authority to the effect that to be

**677**

indictable a false pretense or representation must be an untrue statement of a past or existing fact, not a representation or promise as to future events." [United States v Bonney, 254 F2d 392 (CA9th Cir) (1958).]

Cases from a majority of states standing for the same proposition are collected in Annotation, 168 ALR 833.

American Jurisprudence phrases it thusly:

". . . Disclosure by the drawer of a check that he has insufficient funds to meet the check will, as a general rule, prevent a prosecution [for false pretenses], since the payee cannot be said to have relied on the check. For the same reason a prosecution for giving a postdated check generally will not lie, although, if other representations accompany the giving of the check, which would indicate the check to be good, then the drawer may be punished." [22 Am Jur, False Pretenses, § 59; cf. 35 CJS, False Pretenses, § 21.]

Several authorities have held that where the parties agree at the time the check is issued that it should not be presented for payment until a later day, and the fair implication is there are not sufficient funds at the time of presentation, the offense is not committed. People v Kapitofsky, 144 Misc 543, 258 NYS 861; Lloyd v State, 98 Tex Cr 504, 266 SW 785. A number of authorities go even further, and, on the theory that postdating a check implies the present insufficiency of funds, hold that in any such case the offense is not committed (People v Mazeloff, 229 App Div 451, 242 NYS 623) unless such circumstances or additional representations are involved as to negative the implication of insufficiency. State v Barone, 98 NJ Law 9, 118 Atl 779.

In the *Mazeloff* case, supra, at page 625, the court said:

"Fraud cannot be predicated upon nonperformance of a future promise, and a postdated check is a mere promise to discharge a present obligation at a future date."

Thus, a majority of the Court adopts

a view contrary to the overwhelming weight of authority and presents us with no reasons why military law should depart from the traditional civilian view in this area. Further, the two Federal cases cited by the principal opinion for the proposition that a state of mind may be regarded as an existing fact are both cases dealing with fraud in its civil aspects. Elk Refining Co. v Daniel, 199 F 2d 479 (CA 4th Cir) (1952), was an action to rescind a lease and Blakeslee v Wallace, 45 F 2d 347 (CA 6th Cir) (1930), involved a stockholder's action for a fraud-induced stock sale. It is fundamental that less strict standards may be applied in civil cases where pecuniary judgments are sought than may apply in criminal cases affecting individual liberty. In a case in point, where an attempt was made to introduce a civil concept of fraud into the criminal law, the United States Court of Appeals for the District of Columbia stated:

"In its brief, the government was most candid on this point, stating that Commonwealth v Althause, 207 Mass 32, 93 NE 202, 31 LRA, NS, 999, from which a quotation of dictum was taken did not represent the weight of authority. The same may be said for the other two cases cited to support the prosecution's position on the point. It appears from a study of these cases that the courts concerned found no difficulty in applying the rule on 'intention' which has long been used in actions at law for fraud and deceit. We think it unnecessary to discuss the advisability of transplanting this concept to criminal actions. There is a vast difference between subjecting a defendant to criminal penalties and providing for the redress of wrongs through civil actions.

"A majority of the courts having this problem placed before them have not subscribed to the theory that 'intention', as manifest by false and misleading promises, standing alone, is a *fact* in the sense required for a conviction on the charge of false pretenses." [Chaplin v United States, 157 F 2d 697 (CA DC Cir) (1946).]

678

In conclusion, the Government, in its brief filed before this Court, stated:

" . . . It appears from what was said by the Board of Review in . . . [United States v Steinwachs, 2 CMR (AF) 784] that, prior to the present Manual, a false representation of an existing intention would not support the offense of false pretenses. However, the Uniform Code of Military Justice introduced a complete change in this field, in that Congress specifically codified the offense of obtaining property under false pretenses along with the other larceny-like offenses in Article 121. Unfortunately, no clear expression of Congressional intent is to be found as to the scope of this Article as it pertains to the offense of obtaining money or other property under false pretenses."

And this Court said in United States v Buck, 3 USCMA 341, 12 CMR 97:

" . . . The consolidation of these crimes, however, did not enlarge the scope of the statutory crime of 'larceny' to include more than its components previously encompassed. Since the whole is equal to, not greater than, the sum of all its parts, that which did not constitute common law larceny, embezzlement, or false pretenses, prior to the adoption of Article 121 (a), *supra*, was not thereafter punishable as a violation thereof."

The majority also errs, in my opinion, in failing to return the record of trial for reassessment of sentence by a board of review. Congress has specifically decreed that boards of review shall determine appropriateness of sentence. Article 66(c) of the Uniform Code of Military Justice, 10 USC § 866(c) provides:

"In a case referred to it, the board of review may act only with respect to the findings and sentence as approved by the convening authority. *It may affirm only such findings of guilty, and the sentence or such part or amount of the sentence, as it finds correct in law and fact and determines, on the basis of the entire record, should be approved.* In considering the record, it may weigh the evidence, judge the credibility of witnesses, and determine controverted questions of fact, recognizing that the trial court saw and heard the witnesses." [Emphasis supplied.]

That this is the board's function, and not that of this Court, is clear. In United States v Keith, 1 USCMA 442, 4 CMR 34, the accused was found guilty of desertion and misbehavior before the enemy and the findings were affirmed without opinion by a board of review. This Court reversed the findings as to the offense of misbehavior but affirmed the findings as to the desertion charge. The sentence was within the permissible maximum for the offense of desertion. This Court unanimously held that the rule that if an accused is properly found guilty under any one of several counts, the sentence will not be disturbed on appeal if it is legally justified and appropriate for that count, was not applicable, since no military judicial agency with power to do so had determined that the sentence in the case was appropriate for the offense of desertion alone. The Court, after returning the record of trial to The Judge Advocate General of the Army, for reference to a board of review for the purpose of determining the appropriateness of the sentence said:

" . . . In doing this we are not to be understood as expressing any view concerning the appropriateness to the offense of desertion of the sentence adjudged by the court-martial which tried petitioner. We merely suggest that, in the absence of a sentence exceeding maximum legal limits, we are, by the statutes creating this Court, without authority to determine the question." [United States v Keith, supra, at page 451; cf. United States v Stene, 7 USCMA 277, 22 CMR 67; and United States v Atkins, 8 USCMA 77, 23 CMR 301. See also Jackson v Taylor, 353 US 569, 77 S Ct 1027, 1 L ed 2d 1045, as to power of boards of review to determine appropriateness of sentence.]

In the instant case no board of review

has determined that the sentence is appropriate for the offenses finally approved. When this Court determines that the specifications disapproved are "too slight to justify remand of the case to the board of review" not only is the Court arrogating to itself the power to determine appropriateness of sentence which Congress gave to the boards of review but we are preventing the boards of review from fulfilling their statutory function.

For the reasons stated, I would reverse also the findings of guilty of specification 1 of Charge I and return the record of trial for reassessment of the sentence by a board of review.