**UNITES STATES, Appellee,**

v.

**Irving BROOKS, Jr., Sergeant U.S. Army, Appellant.**

No. 51,294.

CM 444983.

U.S. Court of Military Appeals.

Oct. 6, 1986.

For Appellant: *Captain David W. Sorensen* (argued); *Colonel Brooks B. LaGrua, Major Eric T. Franzen* (on brief); *Colonel William G. Eckhardt, Lieutenant Colonel William P. Heaston, Captain Harry L. Williams, Jr., Captain Robert S. Johnson, Jr.*

For Appellee: *Captain Joseph P. Falcone* (argued); *Colonel James Kucera, Lieutenant Colonel Adrian J. Gravelle, Lieutenant Colonel Joseph A. Rehyansky* (on brief); *Captain John J. Park, Jr.* and *Lieutenant Colonel Gary F. Roberson.*

*Opinion of the Court*

COX, Judge:

On his pleas, appellant was convicted by general court-martial of one specification of possessing marihuana. Contrary to his pleas, he was also convicted of one specification each of possessing and distributing lysergic acid diethylamide (LSD), all offenses being violations of Article 134, Uniform Code of Military Justice, 10 U.S.C. § 934. The court-martial sentenced appellant to confinement for 7 years, total forfeitures, reduction to the lowest enlisted grade, and a dishonorable discharge. The convening authority approved the sentence.

The Court of Military Review set aside and dismissed the specification alleging possession of LSD as being necessarily included in that alleging distribution. Upon reassessment, the court affirmed the sentence awarded at trial.[1]

We granted review of the following issue:

WHETHER THE MILITARY JUDGE ERRED TO THE SUBSTANTIAL PREJUDICE OF THE ACCUSED BY ALLOWING TRIAL COUNSEL TO ASK A DEFENSE WITNESS QUESTIONS ALLEGING PARTICIPATION OF THE APPELLANT IN UNCHARGED OFFENSES IN ORDER TO IMPLY GUILT OF THE OFFENSES CHARGED.

Appellant was charged with the distribution of LSD to a fellow servicemember who was acting as a government informant. The informant testified that he arranged a purchase from appellant and then made appropriate liaison with agents of the criminal investigation command (CID). He received a 20-dollar bill, the serial number of which had been recorded; he then entered appellant's mobile home, bought four "hits" of LSD with the bill, and returned to the agents.

The informant's testimony was corroborated by CID agents who were monitoring the transaction. However, since the alleged distribution took place inside appellant's trailer, they did not observe the transfer. The entire transaction took about 3 minutes according to their estimations.

The following morning, appellant was apprehended on post by CID agents for selling LSD. His person was searched incident to the apprehension; two marihuana cigarettes were found, but no LSD. The twenty-dollar bill given to the informant was in his wallet, along with about $172 of other money. Appellant's trailer and the trailer of a civilian neighbor, Odell James, were searched by agents of the Alabama Bureau of Investigation.[2] No LSD was found in appellant's trailer. Ten tablets of LSD were located in James' trailer.

---

1. As a collateral matter, we note that the U.S. Army Clemency and Parole Board remitted confinement in excess of 4 years on May 24, 1984.

2. The informant had also provided information that James was distributing controlled substances. However, since James was a civilian, the Criminal Investigation Division (CID) did not want him to make a purchase from James.

In his defense, appellant called James as a witness. Testifying under a grant of immunity from Alabama authorities, James stated that he, not appellant, sold the LSD. He said that appellant brought the informant to his trailer and there the purchase was made. He then gave appellant the 20–dollar bill in satisfaction of a pre-existing debt. James denied that appellant encouraged the sale, participated in the negotiations, or received any money for his role in the transaction. The thrust of his testimony was that appellant was an innocent bystander.

Prior to cross-examining James, trial counsel requested an out-of-court hearing to determine the propriety of propounding certain questions to the witness. *See* Art. 39(a), UCMJ, 10 U.S.C. § 839(a). Counsel intended to ask James if he and appellant had sold drugs to named soldiers on two specific occasions, and if he and appellant had journeyed to a certain town in Alabama to purchase illegal drugs. Defense counsel objected to the line of questioning, arguing that such evidence was not admissible under Mil.R.Evid. 404(b), Manual for Courts-Martial, United States, 1969 (Revised edition). Trial counsel contended that the proffered evidence was admissible to show a common plan or scheme on the part of appellant and James to sell controlled substances. He argued that the timing of the events, either on or immediately prior to payday, was a signature marking appellant's involvement with the crime.[3]

Defense counsel also questioned the Government's source of information on the events, implying that trial counsel was engaged in a fishing expedition. Trial counsel asserted that he had a "basis of knowledge for asking the questions."

Instead of having trial counsel ask James the questions during this session, the military judge overruled the objection and re-called the court members. During cross-examination, James denied that appellant was involved in the sales or a trip to purchase drugs for resale.[4] Before us appellant contends that, in allowing trial counsel to ask those questions, the military judge erred to his substantial prejudice, notwithstanding the fact that James denied participating in a scheme to distribute drugs with appellant.

■ Because of the denial, no probative evidence was elicited. If trial counsel knew, or had reason to believe, that James would deny appellant's involvement in the misconduct, it would have been improper to propound the questions, unless he was prepared to prove the crimes by other admissible evidence. *See* S.Saltzburg, L.Schinasi, & D.Schlueter, *Military Rules of Evidence Manual* 363 (2d ed. 1986); ABA Standards for Criminal Justice, The Prosecution Function, Standard 3–5.7(d) (2d ed. 1979). There is nothing in this record which would indicate that trial counsel knew or had reason to believe that James would deny the extrinsic offenses. He was a defense witness who surfaced only shortly before the trial, and then left the area until the date he was to testify. Although the military judge could have required an offer of proof, he was entitled to rely on trial counsel's assertion that he had some basis for asking the questions.

■ If evidence sought to be elicited from a witness is barred by the rules of evidence, then questions suggesting the existence of the evidence are likewise improper, notwithstanding a negative response from the witness. Mil.R.Evid. 103(c); *United States v. Owens*, 21 M.J. 117, 125 (C.M.A.1985). The threshold question,

---

3. The dates in question were apparently paydays at the base. Defense counsel did not challenge the Government's assertion in this regard. The instant offense occurred on January 15, 1983, also a payday.

4. We believe that the better practice in cases such as this would be to have the questions asked out of the presence of the court members. If the military judge had followed this procedure and negative answers had been received, this case would not be before us in its present posture.

therefore, is whether there was a basis for the admissibility of the proffered evidence.[5]

Prior to the adoption of the Military Rules of Evidence, reception of "uncharged misconduct" into evidence was strictly limited. The Government was required to show that there was a nexus in time, place, and circumstance with the charged crime; that the evidence of the accused's participation was plain, clear and conclusive; and that the probative value of the evidence far outweighed the potential prejudicial impact. *United States v. Janis*, 1 M.J. 395, 397 (C.M.A.1976).

■ Since September 1, 1980, the admission of such evidence has been governed by Mil.R.Evid. 404(b). *See United States v. Brannan*, 18 M.J. 181 (C.M.A.1984). Like its forerunner, Mil.R.Evid. 404(b) permits the introduction of evidence of other crimes, wrongs or acts only for specific purposes, such as "proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." The admissibility of such evidence is also subject to the requirement that its probative value be weighed against danger of unfair prejudice. Mil.R.Evid. 403; *United States v. Watkins*, 21 M.J. 224, 227 (C.M.A.1986) (Everett, C.J., concurring in the result); *United States v. Owens, supra* at 124.

■ The broader question, and the question that often arises in prosecutions for drug offense, is how far the prosecutor can go in the introduction of evidence of prior drug use, prior drug transactions, convictions, and the like, for the purpose of offering relevant proof of the existence of the offense in question. It is quite clear that this type of evidence cannot be introduced for the purpose of showing that the accused is "a bad person." Mil.R.Evid. 404(b); *United States v. Brannan, supra.* The Government must first demonstrate that the bad acts are relevant to some aspect of its case. It may well be that the

materiality of such evidence will not arise until, as in this trial, the accused asserts that he is innocent due to a lack of criminal intent or other affirmative defense.

The Government contends that the expected testimony would have shown a common plan or scheme between appellant and James to distribute drugs around the time of paydays to military personnel assigned to that post. The inference sought to be drawn, as in *Brannan*, was that such a scheme had continued until the date of the charged transaction, which was simply another manifestation of that plan. *United States v. Brannan, supra* at 183, *citing United States v. Danzey*, 594 F.2d 905 (2d Cir.), *cert. denied*, 441 U.S. 951, 99 S.Ct. 2179, 60 L.Ed.2d 1056 (1979).

■ While the Government's initial theory of the case was that appellant sold the drugs directly, it was entitled to proceed on the alternate theory of appellant's guilt. Evidence of appellant's prior participation would have rebutted his claim of being an innocent bystander and tended to show a community of intent with James to distribute drugs. Therefore, the evidence would have been relevant to show that appellant aided and abetted the sale, and thus was guilty as a principal.

■ Both counsel argued the issue of probative value vis-a-vis prejudice at trial, and the military judge performed the balancing test required under Mil.R.Evid. 403. His decision will not be reversed absent a clear abuse of discretion. Since the record does not reveal such abuse, the ruling will not be disturbed. *United States v. Mukes*, 18 M.J. 358 (C.M.A.1984); *United States v. Thomas*, 11 M.J. 388 (C.M.A.1981).

The decision of the United States Army Court of Military Review is affirmed.

Chief Judge EVERETT concurs.

Judge SULLIVAN did not participate.

---

5. Trial counsel did not argue that this evidence was proper impeachment of James for prior bad acts under Mil.R.Evid. 608(b).