## UNITED STATES

v.

**Airman Basic David E. FERGUSON, FR 410–39–9579, United States Air Force.**

**ACM S27913.**

U.S. Air Force Court of Military Review.

Sentence Adjudged 25 May 1988.

Decided 14 Sept. 1989.

**560**

Appellate Counsel for the Appellant: Colonel Richard F. O'Hair and Captain Laurence M. Soybel.

Appellate Counsel for the United States: Colonel Joe R. Lamport, Lieutenant Colonel Robert E. Giovagnoni and Major Kathryn I. Taylor.

Before HODGSON, SPILLMAN and PRATT, Appellate Military Judges.

## DECISION

PRATT, Judge:

At a special court-martial composed of members, appellant pleaded guilty to one specification of breaking restriction and, contrary to his pleas, was found guilty of two other specifications of breaking restriction and three specifications of dishonorable failure to pay debts in violation of Article 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 934. The approved sentence includes a bad conduct discharge, confinement for six months, and forfeiture of $330 per month for six months.

On appeal, appellant asserts that the military judge abused his discretion by allowing the prosecution to introduce, over defense objection, evidence of uncharged misconduct in support of its case on the specifications alleging dishonorable failure to pay debts. We disagree.

The three specifications in issue involve "transactions" between appellant and two other airmen, Airman Price and Airman Gentry. A brief summary of these transactions is in order:

In October 1987, Airman Price, a former roommate and friend of appellant, "fronted" appellant $1296 for the purchase of an engagement ring and two wedding rings. Airman Price paid for the rings by allotment and appellant promised to repay Price as the allotments came out of Price's pay beginning in December 1987. Around this same time, Airman Price allowed appellant to charge telephone calls to his billing number with the understanding that appellant would pay him for the calls when the phone bill arrived. In January 1988, after appellant failed to make the first two payments on the rings and to pay most of the phone charges, Price and appellant negotiated and agreed upon a promissory note consolidating both debts whereby appellant would make established monthly payments for a period of three years. Appellant made the first payment, albeit five days late, but failed to make any subsequent payments.

In July and August 1987, through a combination of cash and authority to make bank withdrawals via an automatic teller machine, Airman Gentry gave appellant a total of $450 with the understanding that appellant would use the money to pay some bills for Gentry while he was on leave. Gentry later discovered that the payments had not been made. Although never quite admitting that he did not pay the bills, appellant did acknowledge that he owed Gentry the money since the creditors did not show payment having been received.

Appellant told Gentry not to worry about the money, that he would get it back to him. When this did not occur, Gentry obtained a default judgment in small claims court in December 1987. Appellant continued to tell Gentry and his first sergeant that he would pay the debt, but he never made any payments or any arrangements to pay.

Over defense objection, the military judge admitted documentation and testimony regarding appellant's financial situation. Included were approximately 30 bad checks totalling over $900 [1], a civilian conviction and restitution action involving seven of those bad checks, a $120 debt to the NCO Club which had been the subject of involuntary recoupment action, a $227 outstanding telephone bill, and an outstanding debt of $3500 remaining after the voluntary repossession of appellant's automobile. In addition to the debts themselves, the prosecution elicited testimony from several of these creditors seeking to establish intent to defraud (as to the bad checks) or gross indifference by appellant with regard to the creation or the repayment of these debts.

■ Mil.R.Evid. 404(b) permits the introduction of evidence of other crimes, wrongs or acts only for specific purposes, such as "proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Evidence of uncharged misconduct may not be introduced for the purpose of showing that the accused is "a bad person" who has the disposition to commit crimes; it must be relevant to a specific matter in issue. *United States v. Brooks,* 22 M.J. 441 (C.M. A.1986); *United States v. Logan,* 18 M.J. 606 (A.F.C.M.R.1984).

■ The gravamen of the offense of dishonorable failure to pay just debts is a failure to pay accompanied by "deceit, evasion, false promises, or other distinctly cul-

pable circumstances indicating a deliberate non-payment or grossly indifferent attitude toward one's just obligations." MCM, Part IV, paragraph 71c (1984). Where some specific deceit, evasion or false promise is involved, relevant evidence will often be limited to the specifics of the alleged deceit, evasion, or false promise. In this case, the theory of culpability involves a combination of false promises and "other distinctly culpable *circumstances* indicating a.... grossly indifferent *attitude.*" Under this theory, relevance could necessarily expand to include pertinent aspects of appellant's financial situation during the time in question ("circumstances") as well as any evidence of his degree of attentiveness to the timely discharge of his financial obligations ("attitude"). In the context of this particular offense, then, we find that "attitude" becomes one of the "other purposes" for which uncharged misconduct is admissible under Mil.R.Evid. 404(b).[2]

Thus, given the theory of "grossly indifferent attitude", we find that relevance attaches not only to the details of appellant's immediate dealings with Airmen Price and Gentry, but also to matters tending to show appellant's general financial status and state of mind at the time of these offenses. The determination of a "grossly indifferent attitude" cannot be made in a vacuum; it will revolve around the specifics of appellant's ability to pay and his attitude toward same. Clearly, in this context, evidence of appellant's bad checks, of his other current indebtedness, and of his attitude toward the timely payment of his debts is quite probative of the issues facing the triers of fact.

Appellant argued at trial, and continues to assert on appeal, that the uncharged misconduct at issue focuses on appellant's financial position at the time he entered into the debts with Price and Gentry instead of addressing his state of mind at the

---

1. Other than the seven checks involved in a civilian conviction, extrinsic evidence of these bad checks was never offered by the prosecution. Their existence was raised by the prosecution during its cross-examination of appellant.

2. While the trial counsel and the military judge spoke in more traditional terms of "intent", "knowledge", and "state of mind," we have in essence grouped these together under the term "attitude" inasmuch as this term specifically relates to the particular theory of culpability on which the government relied.

time during which he failed to meet his obligations. We find this argument unpersuasive. First, it is noted that the large majority of the uncharged debt, although incurred mainly in the June–October 1987 timeframe, was still owing during the time periods covered by the charged offenses. Secondly, again as noted above, the charged offenses were not committed in a vacuum. While the crime is consummated at the time a debt is "dishonorably" not paid, the criminal state of mind or attitude may well begin to manifest itself at the time the debt in question is incurred. *See United States v. Cummins*, 9 U.S.C.M.A. 669, 26 C.M.R. 449 (C.M.A.1958). *United States v. Savinovich*, 25 M.J. 905 (A.C.M.R.1988). In this case, for example, at the time appellant was arranging to have Airman Price "front" him $1296 for wedding rings and agreeing to repayment arrangements, he had run up debts totalling approximately $5000 in just the preceding five months. The only portion of that amount he had repaid was as a result of involuntary recoupment through Military Pay Order and some "voluntary" payments to a civilian court following his conviction for bad check offenses. The remainder, around $4000, was still outstanding, with collection attempts having proven futile.

Admittedly, the mere fact that appellant had other debts at the time he secured the "loans" in issue does not in itself establish bad faith or gross indifference. *United States v. Stevenson*, 30 C.M.R. 769 (A.F.B.R.1960). Nor, standing alone, do mere failure to pay promptly, mere failure to keep a promise to pay, simple inability to pay, or even simple irresponsibility towards the debt. *United States v. Kirksey*, 6 U.S.C.M.A. 556, 20 C.M.R. 272 (C.M.A.1955); *United States v. Gibson*, 1 M.J. 714 (A.F.C.M.R.1975); *United States v. Cummins, supra; United States v. Stevenson, supra.* However, that is not to say that each of these facts or failures lacks relevance to the issue of dishonorableness. On the contrary, these and other circumstances surrounding non-payment of a debt may be entirely relevant in determining this ultimate issue. The trier of fact should be entitled to consider all the circumstances and manifestations of attitude which reasonably bear on that issue.

The admissibility of uncharged misconduct under Mil.R.Evid. 404(b) is a function of the similarity between the uncharged misconduct and the offenses charged, with the degree of similarity varying according to the purpose for which the misconduct is offered. *United States v. Beechum*, 582 F.2d 898 (5th Cir.1978) (en banc), *cert. denied*, 440 U.S. 920, 99 S.Ct. 1244, 59 L.Ed.2d 472 (1979). *See also United States v. Brannan*, 18 M.J. 181 (C.M.A. 1984); *United States v. Peterson*, 20 M.J. 806 (N.M.C.M.R.1985). In the present case, where the purpose is to prove "attitude" (much akin to "intent"), we find the uncharged misconduct sufficiently similar to the charged offenses to meet the test of relevance and admissibility under Mil.R.Evid. 404(b).

One final consideration, of course, is the balancing test required by Mil.R.Evid. 403, i.e., whether the probative value of the contested evidence was substantially outweighed by the potential for unfair prejudice to the accused. The trial judge performed this test following argument by both counsel. His decision will not be disturbed absent a clear abuse of discretion. *United States v. Brooks, supra; United States v. Woodyard*, 16 M.J. 715 (A.F.C.M.R.1983); *United States v. Borland*, 12 M.J. 855 (A.F.C.M.R.1981). We find no such abuse.

These offenses were vigorously litigated at trial. In his favor, appellant continuously acknowledged these debts and made one payment to Airman Price. These factors would ordinarily weigh against the existence of dishonorableness. However, considering the totality of the circumstances and appellant's conduct, these acts amount to little more than hollow gestures which cannot obscure the grossly indifferent attitude which characterized his overall conduct toward these debts. Although his claim of a simple inability to pay would have served as a complete defense, *United States v. Smith*, 1 M.J. 703 (A.F.C.M.R.1975), the evidence and testimony at trial convinces us (as it apparently did the court

members) that this defense did not exist in this case. Weighing all the evidence, we are convinced beyond a reasonable doubt that appellant's failure to pay the charged debts was dishonorable.

The remaining invited issues are resolved adversely to appellant. Accordingly, the approved findings and sentence are correct in law and fact and, on the basis of the entire record, are

AFFIRMED.

Chief Judge HODGSON and Judge SPILLMAN concur.