# UNITED STATES COAST GUARD COURT OF CRIMINAL APPEALS
## Washington, D.C.

## UNITED STATES

### v.

## Derrick L. LINDSEY
### Yeoman Second Class (E-5), U.S. Coast Guard

## CGCMS 24384

## Docket No. 1295

## June 12, 2009

Special Court-Martial convened by Commander, Maintenance and Logistics Command Pacific. Tried at Alameda, California, on 27 July 2007.

| | |
|---|---|
| Military Judge: | CDR Stephen P. McCleary, USCG |
| Trial Counsel: | LT Jonathan A. Alexander, USCG |
| Assistant Trial Counsel: | LT Robert E. Stiles, USCGR |
| Defense Counsel: | LTJG David A. Christenson, JAGC, USNR |
| Appellate Defense Counsel: | CDR Necia L. Chambliss, USCGR |
| Appellate Government Counsel: | LT Ronald B. Seely, USCGR |
| | LT Emily P. Reuter, USCG |

## BEFORE
## McCLELLAND, LODGE & KENNEY
### Appellate Military Judges

McCLELLAND, Chief Judge:

Appellant was tried by special court-martial, military judge alone. Pursuant to his pleas of guilty, entered in accordance with a pretrial agreement, Appellant was convicted of one specification of failure to obey a lawful order, in violation of Article 92, Uniform Code of Military Justice (UCMJ), and one specification of dishonorably failing to pay a debt, in violation of Article 134, UCMJ. The military judge sentenced Appellant to confinement for 120 days, reduction to E-1, and a bad-conduct discharge.

The Convening Authority approved the sentence as adjudged, but suspended all confinement in excess of sixty days for a period of twelve months from the date of the

Convening Authority's action.  The Convening Authority also deferred and waived automatic forfeitures arising under Article 58b(a)(1), UCMJ, to the benefit of his dependent wife, in accordance with the pretrial agreement.  As to the suspension of confinement, the pretrial agreement provided that the period of suspension would end twelve months from the date of release from confinement (Appellate Ex. VIII), but the Convening Authority's action provided for a period of twelve months from the date of the said action, which was 112 days after the date of trial and hence surely after the date of release from confinement.  By either measure, the twelve months has passed, and there is no indication that the suspension was vacated.  Hence it appears that there has been no prejudice, and the error is now moot.  However, we urge staff judge advocates to take care that the action of the convening authority complies with the precise terms of the applicable pretrial agreement in each case.

Before this Court, Appellant has assigned as error that an unsuspended bad-conduct discharge is an inappropriately severe punishment.  In addition, this Court ordered briefs on the following issue: Is it necessary to the offense of dishonorable failure to pay a debt, as alleged in the Specification under Charge II, that the dishonorable conduct occur after the debt becomes due and payable?  In response to our order, Appellant filed a supplemental brief contending that the offense does require dishonorable conduct after the debt becomes due and payable, and since according to the providence inquiry there was no dishonorable conduct after that date in this case, the plea to Charge II is improvident.  The Government filed a brief in answer to Appellant's supplemental brief, contending, contrary to Appellant's position, that there is no requirement that the conduct that makes the failure to pay dishonorable occur after the debt's due date, and accordingly, the plea to Charge II is provident.

## Dishonorable Failure to Pay Debt

Appellant was charged with dishonorably failing to pay a debt, in the following specification:

> In that YN2 Derrick L. Lindsey, U.S. Coast Guard, on active duty, being indebted to Citibank Corporation in the sum of approximately $31,000 for purchases using his government sponsored credit card, which amount became due and payable on or about 7 January 2007, did, at or near Alameda, California dishonorably fail to pay said debt.

Under the other charge, he was charged with using the government-sponsored card for purposes other than government travel, contrary to an order he had received.

Appellant pleaded guilty to both charges and their single specifications. During the providence inquiry, Appellant explained that he returned from a TAD assignment owing Citibank roughly $2,000 on his government card, but after filing a travel claim, he did not use the money he received to pay the card balance. Instead, he attempted to obtain the necessary funds by gambling, which led him into a gambling habit that consumed his funds, and he began using the government card to pay for food and gasoline and other expenses. (R. at 39.) The problem began around July 2006. (R. at 45.) The balance eventually reached $31,000, which was made possible by Appellant's status as an "issuer" of such cards, in which capacity he had authority to raise the credit limit on cards. (R. at 32, 41, 49.) He raised the credit limit on his own card several times so that he could continue to use the card for personal use. (R. at 42-43.) He was required to turn in the card in December 2006 when his command became aware of the misuse of the card. (R. at 45.) From the time the debt stood at about $2,000 (properly incurred during official travel) until January 2007, when he received a Citibank bill for approximately $31,000, he made no payments to Citibank. (R. at 46.) Beginning 1 February 2007, he made monthly payments of $290 by involuntary allotment from his pay. (R. at 40, 47.)

Appellant acknowledged that his failure to pay was dishonorable in that he didn't make any effort to pay the balance and he continued to raise the limit on the card. (R. at 48.)

"More than negligence in nonpayment is necessary [to support a conviction of dishonorably failing to pay a debt]. The failure to pay must be characterized by deceit, evasion, false promises, or other distinctly culpable circumstances indicating a deliberate nonpayment or grossly indifferent attitude toward one's just obligations." Manual for Courts-Martial, Pt. IV, ¶ 71.c (MCM), United States (2005 ed.). The logic of the specification, by any ordinary reading, implies that Appellant's action constituting his offense ("dishonorably fail to pay") must have taken place after the debt became due and payable.[1] Furthermore, the elements of the offense

---

[1] The sample specification calls for, before the final phrase "dishonorably fail to pay said debt," an allegation of the dates of the offense ("from _____ 20__, to _____ 20__"), MCM, Pt. IV, ¶ 71.f., but there is no such allegation of

listed in the MCM so imply. The third element reads: "That while the debt was still due and payable the accused dishonorably failed to pay this debt." MCM, Pt. IV, ¶ 71.b.(3). Given the providence inquiry, with its focus on events before the debt became due, we must address the possibility that Appellant's plea of guilty to this specification was improvident.

It is important to note that the core of the offense of dishonorable failure to pay a debt is the failure to pay. Clearly, to support a finding of guilty, this must occur after the due date alleged. However, it is not so clear that characterizing this failure as dishonorable, making the failure to pay criminal, must be based on factors occurring after the due date. It can be argued that Appellant's intentions, and manifestations of his intentions, that occurred before the debt became due and payable, would suffice. *See United States v. Young*, 12 C.M.R. 939, 942 (A.F.B.R. 1953) (citing Winthrop, *Military Law and Precedents*, 715 n. 42 (2d ed. 1920)) (contracting a debt under false representations, accompanied by unconscionable delay in payment, supports a conviction for failure to pay a debt). *See also United States v. Cummins*, 9 USCMA 669, 674, 26 C.M.R. 449, 454 (1958); *United States v. Alexander*, 22 C.M.R. 740 (C.G.B.R. 1956). The Government argues that conduct occurring entirely before the debt became due is adequate support for a finding of guilty, and the dissent agrees. However, the cases upholding a conviction where dishonorable conduct occurred before the due date all involve some conduct tending to show dishonorableness after the debt became due in addition to the earlier conduct. We have found no case where all conduct supporting dishonorableness preceded the due date of the debt.[2]

One may ask why the offense should require some dishonorable conduct to occur after the due date. Consider this hypothetical. A person buys a car on credit, then incurs another debt knowing that current income, expenses and car payment will make it impossible to repay the new debt as scheduled. The debtor's plan is to complain of imaginary defects in the car and stop paying on the car loan for as long as possible without having the car repossessed, then

---

dates in the specification in this case. We have no occasion to consider the adequacy of a specification containing an allegation that the dates of the offense preceded the date the debt became due and payable.

[2] The dissent claims that *Cummins* is a case where all conduct supporting dishonorableness preceded the due date, but the creditors' letters followed the due dates, and the court cited failure to acknowledge these letters in support of a finding of dishonor. 26 C.M.R. at 453. Likewise, we believe the dissent's reasoning goes beyond that of *United States v. Savinovich*, 25 M.J. 905 (A.C.M.R. 1988).

recommence paying on the car loan and stop paying on the new debt, and continue to temporize, not meeting both debt obligations. The debtor implements the plan by falsely complaining about the car, but before the next payment is due, has a change of heart, sells the car and pays off the loan. The false complaint might have supported a charge of dishonorable failure to pay a debt if, in fact, the debtor had failed to make the payment when due and continued the scheme. However, because of the course change, the offense was not committed. Now consider the same hypothetical, but when the debtor sells the car, the proceeds are insufficient to fully repay the car loan, and the debtor does fail to pay the debt in full when due. Surely some further dishonorable conduct is required before the debtor may be found guilty of dishonorable failure to pay a debt. In our view, dishonorableness occurring wholly before the debt is due should not be enough to criminalize nonpayment of a debt. *See United States v. Kirksey*, 6 USCMA 556, 559-61, 20 C.M.R. 272, 275-77 (1955).

We conclude that unconscionable delay, or some other fact supporting a finding of dishonorableness after payment was due, is essential. In this case, that essential piece is absent. There is no factual basis to support any dishonorableness after the due date, the military judge did not explain that some dishonorableness must have occurred after the due date, and Appellant did not admit that such had occurred.[3]

It might be possible to uphold the conviction by considering a closely related offense of dishonorable failure to pay a lesser sum after July 2006, in accordance with *United States v. Felty*, 12 M.J. 438, 442 (C.M.A. 1982). However, we deem that an unproductive exercise to salvage a conviction that holds little value. Virtually all the facts pertaining to the alleged offense of dishonorable failure to pay a debt may properly be considered in aggravation or extenuation of the other offense, violating an order by using the government-sponsored card for purposes other than government travel: that his unauthorized use of the card was a product of his gambling habit; that he failed to pay any of the money borrowed using the card before his illegal activity was discovered; that the balance on the card account reached $31,000; that after discovery, payment of the debt commenced by involuntary allotment; and that he used his

---

[3] What Appellant really admitted was dishonorable incurrence of debt before 7 January 2007, rather than dishonorable failure to pay debt after 7 January 2007.

position as "issuer" to raise the credit limit, enabling his continued unauthorized use of the card.[4] Hence we believe a conviction for dishonorable failure to pay a debt would have no impact on the sentence.

Accordingly, we find improvident the plea of guilty to dishonorable failure to pay a debt. We set aside the conviction of Charge II and its specification. As to the sentence, we are certain that even without Charge II, it would not have been less than the sentence adjudged.

## Other Issues

After careful consideration of Appellant's contention that an unsuspended bad-conduct discharge is an inappropriately severe punishment, it is rejected. We are convinced that a sentence of confinement for 120 days, reduction to E-1, and a bad-conduct discharge is appropriate for Appellant and the remaining offense.

One more point deserves mention. We note an apparent misstatement by the military judge after sentencing, concerning the effective date of a reduction in grade. After announcing sentence, when discussing the effect of the pretrial agreement on the sentence, the military judge said, "One of the things to be aware of is that your reduction in rate does not become effective until Admiral Brown [the Convening Authority] takes his final action, and that's assuming that he agrees to reduce you to an E-1, which he does not have to do." (R. at 119.) This is contrary to Article 57(a)(1), UCMJ, which provides that a reduction in grade, as well as a forfeiture of pay, takes effect on the earlier of fourteen days after the sentence is adjudged or the date the sentence is approved by the convening authority. We do not discern any prejudice to Appellant from this misstatement.

## Decision

---

[4] The fact that $2,000 of the final balance was initially authorized but went unpaid, which is arguably not proper aggravation of Charge I, is of little significance. It probably would have been revealed as an incidental matter in the course of trial even if there had been no Charge II.

We have reviewed the record in accordance with Article 66, UCMJ. Upon such review, the findings on Charge II and its specification are set aside. The remaining findings of guilty are affirmed. The sentence, as approved and partially suspended below, is affirmed.

Judge LODGE concurs.

KENNEY, Judge (concurring in part and dissenting in part):

I concur that sentence of confinement for 120 days, reduction to E-1 and a bad-conduct discharge is appropriate in this case. However, I would affirm the finding under Charge II and its sole specification for dishonorable failure to pay the debt incurred by Appellant.

Clearly, the language "while the debt was due and payable" modifies the language "the accused dishonorably failed to pay the debt." MCM, Pt. IV, ¶ 71.b.(3). The majority believes that this language mandates some affirmative dishonorable action by the accused after the debt becomes due. I disagree. Instead, I believe that dishonorable conduct committed solely prior to the debt becoming due and payable can transform subsequent inaction or indifference into conduct fulfilling the elements of the offense.

The explanation of the offense states that "[m]ore than negligence in nonpayment is necessary. The failure to pay must be characterized by deceit, evasion, false promises, or other distinctly culpable circumstances indicating a deliberate nonpayment or grossly indifferent attitude . . . . [T]he court-martial may convict only if it finds *from all of the evidence* that the conduct was in fact dishonorable." MCM, Pt. IV, ¶ 71.c (emphasis added). *See also United States v. Hughes*, 59 M.J. 948, 950 (C.G.Ct.Crim.App. 2004). A reference to "all of the evidence" when considering dishonorable conduct does not imply a limit on the time when the dishonorable conduct must occur. Instead, it infers that an accused could commit the whole of the dishonorable conduct prior to the debt becoming due and payable, at which time, even if the accused does nothing, provided the dishonorable conduct directly causes the failure to pay, the offense is complete. For example, in a slight variation of the hypothetical posed by the majority, a failure to pay after the debt is due and payable would be dishonorable if the evidence reveals that the accused had no intention of ever paying the debt at the time the obligation was incurred,

or prior to the debt becoming due, through deceit, evasion, false promises, or other distinctly culpable circumstances, created a situation that made it impossible for the accused to pay.

These examples are similar to those addressed by the U.S. Court of Military Appeals in *United States v. Cummins,* 9 USCMA 669, 672-73, 26 C.M.R. 449, 452-53 (1958) where the accused in failing to pay two loans, *inter alia*, failed to reveal to each of the two creditors the existence of the other's loans and failed to arrange for appropriate allotments from his pay to ensure that the loan payments were made. Even though all of accused's dishonorable conduct occurred prior to the debt becoming due (he did not acknowledge or respond to requests for payment from the banks), the court upheld this basis for conviction, while reversing the conviction because of erroneous instructions to the panel. *Id.* at 455-456. Another service court has adopted the logic of *Cummins. See United States v. Savinovich,* 25 M.J. 905, 907 (A.C.M.R. 1988) ("Moreover, we believe that the element of 'dishonorable' in the failure to pay can be shown by conduct *at the time of the incurring of the debt* and not just by conduct subsequent to that time."). In *Savinovich*, the appellant "accumulated well over $12,000 in debt knowing he did not, and would not, have the funds to pay those debts . . . . Under these circumstances . . . appellant's gross indifference constituted a dishonorable failure to pay." *Id*.at 908.

During the providence inquiry in the present case, the accused described his inability to pay as follows:

MJ: Tell me in your own words what was dishonorable.

ACC: Sir, I didn't make any effort to pay the balance, and I continued to raise my spending limit. So that was dishonorable.

. . . .

MJ: Could you have paid the debt if you wanted to?

ACC: No, sir.

MJ: Is the reason you could not because of the extent of your gambling? Is that why or were there other reasons?

ACC: Because of previous bills that I already had brought upon myself, I didn't have the money to pay.

MJ: But those bills that you accumulated, they were ones that you did of your own free will ?

ACC: Yes, sir.

MJ: And at the same time, you were using your official travel charge card to continuously run up further bills against that?

ACC: Yes, sir.

MJ: And the reason that you were able to keep running up more money was because of your status as an issuer - - issuer of cards; you were able to just keep extending the size of your credit limit?

ACC: Yes, sir.

MJ: And were you not able to do that with your other debts?

ACC: No, sir.

(R. at 48-49.)

Like *Savinovich*, the Appellant's continuous accumulation of more debt prior to its becoming due and payable, while knowing he could not pay, amounted to gross indifference, and the improper raising of his credit limit constituted other culpable circumstances. It was not error for the military judge to accept the plea of guilty for Charge II and its specification.

For the Court,



Ryan M. Gray
Clerk of the Court