# UNITED STATES COAST GUARD COURT OF CRIMINAL APPEALS
## Washington, D.C.

## UNITED STATES

### v.

## Douglas W. FARENCE
### Boatswains Mate First Class (E-6), U.S. Coast Guard

## CGCMG 0178

## Docket No. 1161

## 30 September 2002

General Court-Martial convened by Commander, Eighth Coast Guard District, New Orleans, Louisiana. Tried at Coast Guard Station Galveston, Texas, 25-29 June 2001.

| | |
|---|---|
| Military Judge: | CAPT Michael J. Devine, USCG |
| Trial Counsel: | LCDR David L. Nichols, USCG |
| Assistant Trial Counsel: | CDR Rosanne Trabocchi, USCG |
| Individual Military Counsel: | LT Darrin W. Gibbons, USCG |
| Detailed Defense Counsel: | LT Glen H. Watkins, JAGC, USNR |
| Appellate Defense Counsel: | CDR Jeffrey C. Good, USCG |
| Appellate Government Counsel: | LT Daniel J. Goettle, USCG |

## BEFORE
## PANEL SEVEN
## BAUM, BRUCE & KILROY
Appellate Military Judges

KILROY, Judge:

Appellant was tried by a general court-martial composed of officer and enlisted members. Appellant pled not guilty to all charges brought against him. Appellant was convicted of one specification of displaying images of a female and a horse engaged in sex acts, one specification of misprision of a serious offense by advising subordinates to transport illegally obtained shrimp in a government vehicle to his off-base quarters to avoid detection and by failing to report the illegal acceptance of shrimp to authorities, and one specification of making and uttering a worthless check, in violation of Article 134, Uniform Code of Military Justice (UCMJ); one specification of accessory after the fact to wrongful acceptance of shrimp by station personnel during law enforcement boardings, by concealing the illegally obtained shrimp to avoid detection, in violation of Article 78, UCMJ; and one specification of violation of a general order by using a government travel card to make unauthorized purchases, in violation of Article 92,

UCMJ.  Appellant was sentenced to reduction to E-1 and a bad conduct discharge.  The convening authority approved the sentence as adjudged.

Appellant was also convicted of one specification of conspiracy to misuse his wife's government credit card, in violation of Article 81, UCMJ, and one specification of misprision of a serious offense by failing to report the illegal acceptance of shrimp to authorities (on the same occasion as the accessory conviction above, but a different occasion than the other misprision conviction above), in violation of Article 134, UCMJ.  The military judge dismissed these two specifications after findings as an unreasonable multiplication of charges for sentencing purposes.

Appellant has assigned seven errors:  (1) that the specification alleging the display of pornographic images fails to state an offense, (2) that Appellant had no Constitutionally required notice that showing a "pornographic" image to other adults is a criminal offense, (3) that the evidence was neither legally nor factually sufficient to demonstrate Appellant's conduct in showing a sexually explicit computer image to his coworkers was prejudicial to good order and discipline, (4) that the military judge's instructions to the members on sentencing overstated the maximum authorized punishment, (5) that the staff judge advocate's recommendation misstates the findings and fails to alert the convening authority that the military judge dismissed several specifications as an unreasonable multiplication of charges, (6) that the government failed to prove that Appellant's failure to maintain sufficient funds was "dishonorable," and (7) that an unsuspended bad-conduct discharge is inappropriately severe.

Pursuant, to Appellant's Motion for Oral Argument on 23 May 2002, this Court heard oral arguments on the 9th of July 2002.

I

Appellant was convicted under Article 134, UCMJ, for displaying pornographic images depicting a female and a horse engaged in sex acts to four of his subordinates, onboard their duty station, to the prejudice of good order and discipline in the armed forces.  Appellant assigned three errors regarding this conviction:  (1) that the charge failed to state an offense, (2) that appellant had no Constitutionally required notice that showing such images to other adults is an offense, and (3) that the evidence was neither legally nor factually sufficient to demonstrate that his conduct was prejudicial to good order and discipline.

A

Appellant complains that the following specification fails to state an offense:

In that BM1 Douglas W. FARENCE, USCG, while on active duty, on divers occasions between 13 May 1999 and 1 July 2000, at Station Galveston, Texas, did display to [four named subordinate enlisted members] pornographic images depicting males and females, and a female and horse engaged in sex acts including intercourse, oral sex, and anal sex and that such display by BM1

Douglas W. FARENCE, was prejudicial to the good order and discipline in the armed forces.[1]

Appellant argues that, when conduct charged as an Article 134, UCMJ, offense is not "illegal under the common law or under most statutory codes," but is instead "illegal solely because, in the military context, its effect is to prejudice good order or to discredit the service," then the specification must contain either general words of criminality, or must allege sufficient facts to show why the conduct was prejudicial to good order and discipline. *United States v. Davis*, 26 M.J. 445, 448 (CMA 1988).

In *Davis*, the challenged specifications, just as the one before us, alleged that the charged conduct was "to the prejudice of good order and discipline. . . ." *Id.* at 447. The Court held that

[I]f conduct is alleged under Article 134 'as disorder or neglect to the prejudice of good order and discipline' . . . two elements must be set out: (1) that the accused did or failed to do certain acts; and (2) that, under the circumstances, the accused's conduct was to the prejudice of good order and discipline in the armed forces. . . ."

*Id*. at 448; *see also* Manual for Courts-Martial (MCM) Pt. IV, ¶ 60.b. (2000 ed.).

The Court found that the challenged specifications in *Davis* "clearly allege both elements: They contain specific factual allegations of the acts committed, and they charge that the conduct was prejudicial to good order and discipline. . . ." *Id.* at 448. The Court did not hold, as appellant argues, that the specification must contain either general words of criminality or factual allegations that show *why* the conduct was prejudicial to good order and discipline. To the contrary, the Court held that when

[t]he essence of appellant's crime is that his unusual conduct, when it occurred on a military installation, had an adverse effect on military order and discipline [such that] the 'wrongfulness' of his conduct consisted of its threat to good order and discipline . . . [w]e can see no harm in alleging criminality in terms of the provisions of Article 134 which made the conduct wrongful . . . The objectives of notice and protection from double jeopardy are in our view satisfied by the language employed here.

*Id.* at 448; *see also United States v. Sell*, 3 USCMA 202, 206, 11 CMR 202, 206 (1953).

In our view, *Davis* firmly established that a specification is sufficient if it alleges the acts complained of and alleges that those acts were prejudicial to the good order and discipline of the armed forces. Stated differently, the words "prejudicial to the good order and discipline of the armed forces" *are*, without more, "words importing criminality" sufficient to support a specification alleging acts that would not otherwise constitute a crime. *United States v. Brice*, 17

---

[1] The members found appellant guilty of this specification, excepting the words "pornographic images depicting males and females, and a female and horse engaged in sex acts including intercourse, oral sex, and anal sex" and substituting the words "pornographic images depicting a female and horse engaged in sex acts."

USCMA 336, 38 CMR 134 (1967).

The specification in the instant case alleged that appellant displayed to his named subordinates, onboard a Coast Guard unit, images depicting bestiality and alleged that so doing was prejudicial to the good order and discipline of the armed forces. We find that this specification sufficiently states an offense.

Appellant also cites *United States v. Lockstrom*, 48 CMR 202 (AFCMR 1974) and *United States v. Wolfson*, 36 CMR 722 (A.B.R. 1964), arguing that the Court's discussion of these cases in *Davis* requires something more than we have stated above. In *Davis*, the Court noted that "at most, these cases stand for the proposition that a specification cannot be saved by general language drawn from Article 134 when that specification otherwise does not contain words of criminality or does not set forth acts that might be prejudicial to good order and discipline. . . ." *Davis* at 449. Although we consider this *dictum*, we find that the specification in the instant case sets forth acts that might be prejudicial to good order and discipline and is therefore sufficient.

B

Appellant argues that he had no constitutionally required notice that showing a "pornographic" image to other adults is a criminal offense.

In support of this argument, appellant cites *United States v. Johanns*, 20 M.J. 155 (CMA 1985), *cert. denied*, 474 U.S. 850, 88 L. Ed. 2d 122, 106 S. Ct. 147 (1985), for the proposition that notice that conduct is in violation of Article 134, UCMJ, is a constitutional prerequisite to prosecution. We do not read *Parker v. Levy*, 417 U.S. 733, 41 L. Ed. 2d 439, 94 S. Ct. 2547 (1974), and its progeny, including *Johanns*, to support appellant's proposition. Rather, *Parker v. Levy* recited the constitutional requirement "that criminal responsibility should not attach where one could not reasonably understand that his contemplated conduct is proscribed." *Id.* at 758, quoting *United States v. Harriss*, 347 U.S. 612, 98 L. Ed. 989, 74 S. Ct. 808 (1954). This requirement applies to the entire UCMJ. The correct rule of law, then, is that notice that conduct is in violation of *the UCMJ* (vice any particular Article) is a constitutional prerequisite to prosecution under the UCMJ.

In this case, the record clearly establishes that appellant displayed pornographic images of bestiality on a government-owned laptop computer. The Coast Guard's Standards of Conduct Instruction (SOCI), a punitive general order, prohibited such unauthorized use of government property. COMDINST M5370.8A § 1.B (Aug. 30, 1993).[2] Thus, appellant was on notice that

---

[2] This instruction states that "[t]he Office of Government Ethics Standards of Ethical Conduct are hereby incorporated by reference into this Manual, and all Coast Guard personnel are ordered to obey the provisions thereunder as set forth in Enclosure (3). . . . this order constitutes a lawful general order within the meaning of Article 92, Uniform Code of Military Justice, and paragraph 16 or Part IV to the Manual for Courts-Martial, United States, 1984. Coast Guard military members, and PHS and DOD uniformed personnel assigned to the Coast Guard, who violate any of the Office of Government Ethics Standards of Ethical Conduct provisions of this instruction are subject to prosecution under the UCMJ." COMDINST M5370.8A § 1.B (Aug. 30, 1993). Enclosure (3) reproduces 5 C.F.R. Part 2635, and provides that "[a]n employee has a duty to protect and conserve Government property and shall not use such property, or allow its use, for other than authorized purposes. COMDINST M5370.8A § Encl. (3), p. 59, 5 C.F.R. § 2635.704 (2002). "Authorized purposes" is defined as "those purposes for which Government

his conduct violated the UCMJ. He could have been prosecuted for this conduct under Article 92, UCMJ.[3] We have found no authority to suggest that an accused who has notice that his conduct is proscribed is constitutionally protected from prosecution for that conduct under Articles other than the one(s) he might have expected. The fact that other aspects of appellant's conduct in this case, *viz.*, its impact on good order and discipline, led to a charge under Article 134, UCMJ, rather than Article 92, UCMJ, does not operate to excuse appellant from prosecution for conduct that he knew to be proscribed. *See, e.g., United States v. Daye*, 37 M.J. 714 (AFCMR 1993) (conviction under Article 134, UCMJ, for the appellant's indecent act of videotaping his own sex acts without his partners knowledge upheld despite arguable lack of notice that videotaping sex acts with a consenting adult might be criminal, because the appellant was on notice that another aspect of his conduct, i.e., adultery, was proscribed).

This assignment of error is without merit.

C

Appellant argues that the evidence was neither legally nor factually sufficient to demonstrate his conduct in showing a sexually explicit computer image to his coworkers was prejudicial to good order and discipline.

A conviction under Article 134, UCMJ, for conduct to the prejudice of good order and discipline in the armed forces may be upheld only if the evidence was legally and factually sufficient to support a finding that the prejudice was reasonably direct and palpable. MCM Pt. IV, ¶ 60.c.2.a. (2000 ed.). The test for legal sufficiency of the evidence is whether, considering the evidence in the light most favorable to the government, the trier of fact could rationally find the existence of every element of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 61 L. Ed. 2d 560, 99 S. Ct. 2781 (1979); *United States v. Blocker*, 32 M.J. 281 (CMA 1991). The test for factual sufficiency is whether, after weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses, this court is itself convinced of appellant's guilt beyond a reasonable doubt. Article 66(c), UCMJ; *United States v. Turner*, 25 M.J. 324 (CMA 1987).

Appellant argues that there was no evidence of any adverse impact on good order and discipline. We disagree.

Appellant's relative rank and position in the chain of command are clearly relevant to the impact his actions may have had on good order and discipline. *See United States v. Hullett*, 40 M.J. 189, 192 (CMA 1994). Additionally, the time, place, and circumstances of his act may form the basis for determining if the conduct is to the prejudice of good order and discipline. *United States v. Guerrero*, 33 M.J. 295, 298 (CMA 1991) (noting that cross-dressing in the

---

property is made available to members of the public or for purposes authorized in accordance with law or regulation." *Id*. "Government property" "includes any form of real or personal property in which the Government has an ownership . . . [and includes] office supplies, telephone and other telecommunications equipment . . . [and] automated data processing capabilities. . . ." *Id*.

[3] Appellant was, in fact, charged under Article 92, UCMJ, for violating a general order by accessing pornographic images on a government computer, but found not guilty.

privacy of one's home, with the curtains closed, and no reason to believe that others might observe, would not constitute an offense). In the instant case, the evidence showed that appellant, the Executive Petty Officer and therefore second in command at his unit, displayed an image depicting bestiality to his subordinates on a government computer, at his unit, during the workday. In doing so, he "divested himself of the status of a superior noncommissioned officer and, thereby, directly affected his professional relationship with . . . lower ranking person[s] in his company." *United States v. Warnock*, 34 M.J. 567, 575 (ACMR 1991) (Iskra, J., dissenting). We find that the evidence amply showed direct and palpable prejudice to good order and discipline.

Appellant further argues that the image was not "pornography," because it was not intended to arouse sexual desire. We need not decide whether a motion picture of a human being engaged in a sex act with a member of another species is "pornography." All that is required for conviction under the general article is proof that the accused did a certain act and that, under the circumstances, that act was prejudicial to good order and discipline. MCM Pt. IV, ¶ 60.b. (2000 ed.). Appellant's act was the display of a motion picture to his subordinates. The only question is whether or not that act was prejudicial to good order and discipline. To be so, the picture need not have been pornographic.

We hold the evidence supporting this offense was both legally and factually sufficient.

II

Appellant's next assignment of error is that the military judge's instructions to the members on sentencing overstated the maximum authorized punishment. This assignment focuses on the instruction pertaining to confinement. The judge instructed the members that the maximum authorized punishment included confinement for eight years. Appellant contends the actual maximum authorized confinement was six years, seven months. The government responds that the maximum confinement available was seven years.

The record is unclear as to how the judge calculated the maximum punishment. The parties agree as to the maximum confinement authorized for each of the offenses for which appellant was convicted, with the exception of the Article 134, UCMJ, conviction, described above, for displaying sexual images at his workplace. Regarding the latter, they disagree.

The specification of the offense at issue was drafted under MCM Pt. IV, ¶ 60.c.6. (2000 ed.). The offense described by that specification is not a listed offense under Article 134, UCMJ. The maximum punishment for the offense must therefore be determined pursuant to RCM 1003(c)(1)(B)(i), which instructs:

> For an offense not listed in Part IV of this Manual which is included in or closely related to an offense listed therein the maximum punishment shall be that of the offense listed; however, if an offense not listed is included in a listed offense and is closely related to another, or is equally closely related to two or more listed offenses, the maximum punishment shall be the same as the least severe of the listed offenses.

Appellant contends this offense is closely related to the enumerated Article 134, UCMJ, violation described as disorderly conduct, and the maximum authorized confinement should therefore be one month. MCM Pt. IV, ¶ 73 (2000 ed.). The government argues that the offense is more closely related to willful dereliction in the performance of duties in violation of Article 92, UCMJ, and the maximum confinement should be six months. *Id.* at ¶ 16. The government bases its analysis on the Coast Guard Equal Opportunity Program Manual that, the government argues, described the appellant's conduct as sexual harassment and imposed a duty on him not to engage in such conduct.

We can discern no basis for the judge's apparent determination of eighteen months as the authorized maximum confinement for this Article 134, UCMJ, offense. We need not determine, however, whether the judge erred in this regard, because we find that the appellant has not shown that he was prejudiced by such an error.

Appellant did not object to the instruction at trial. "Failure to object to an instruction before the members close to deliberate on the sentence constitutes waiver of the objection in the absence of plain error." RCM 1005(f). "In order to constitute plain error, the error must not only be both obvious and substantial, it must also have 'had an unfair prejudicial impact on the jury's deliberations….' The plain error doctrine is invoked to rectify those errors that 'seriously affect the fairness, integrity or public reputation of judicial proceedings.'" *United States v. Fisher*, 21 M.J. 327, 328-9 (CMA 1986) (citations omitted).

In this case, the maximum punishment authorized for the offenses of which appellant was convicted included a dishonorable discharge, forfeiture of all pay and allowances, reduction to the lowest enlisted pay grade and confinement, by appellant's calculations, for six years and seven months. Appellant was sentenced to a bad conduct discharge and reduction to E-1. He received no confinement.

Appellant cites a number of cases in which prejudice has been found as a result of an erroneous instruction as to maximum confinement. *See United States v. Baker*, 14 M.J. 361 (CMA 1983), overruled for other reasons by *United States v. Teters*, 37 M.J. 370 (CMA 1993) (sentence set aside where maximum punishment announced as six years, six months vice three years, six months); *United States v. Mayo*, 12 M.J. 286 (CMA 1982) (sentence set aside where maximum punishment announced as thirteen years vice eight years, three months); *United States v. Pabon*, 37 M.J. 836 (AFCMR 1993) (sentence set aside where maximum punishment announced as twenty-nine years vice twenty years). Appellant also notes, however, that courts in other cases have found the overstatement to be *de minimis*. *See United States v. McCormick*, 12 USCMA 26, 30 CMR 26 (1960) (twenty-seven years vice twenty-five years, six months found to be *de minimis*); *United States v. Herrera*, 45 CMR 592 (AFCMR 1972) (fifteen years vice thirteen years, six months found to be *de minimis*).

We note that, unlike the instant case, in all of the cited cases in which prejudice was found, some confinement had been imposed. Appellant argues that, even though the members did not adjudge confinement in this case, there is a risk that they viewed the offenses as more

serious than they were because of the military judge's misstatement, and that this may have been enough to tip the balance in favor of a punitive discharge.

Appellant has the burden of persuading this court that the alleged error resulted in material prejudice. *See United States v. Kho*, 54 M.J. 63, 65 (2000) (citations omitted). Without determining whether the judge erred in his instruction as to maximum sentence, we are not persuaded, in light of the imposition of no confinement, that the difference between the authorized maximum punishment he announced, eight years, and the maximum punishment proposed by appellant, six years, seven months, affected the members' determination of the punishment they imposed.

This assignment of error is without merit.

III

Appellant next complains that the staff judge advocate's recommendation (SJAR) misstated the findings and failed to alert the convening authority that the military judge had dismissed several specifications as an unreasonable multiplication of charges.

The SJAR included in the summary of charges, pleas, and findings, in addition to the findings noted at the beginning of this opinion, notation that appellant had been found guilty of one specification of conspiracy to use his wife's government travel card for unauthorized purchases, in violation of Article 81, UCMJ, and one specification of misprision of a serious offense, in violation of Article 134, UCMJ, (covering the same incident for which he was convicted as an accessory under Article 78, UCMJ). The SJAR failed to note that the military judge had dismissed these two specifications for sentencing purposes as an unreasonable multiplication of charges.[4]

Appellant submitted no comments on the SJAR and submitted no matters to the convening authority regarding clemency. As in the case of the failure to object to the alleged error in the maximum sentence instruction discussed above, "[f]ailure of counsel for the accused to comment on any matter in the recommendation… in a timely manner shall waive later claim of error with regard to such matter in the absence of plain error." RCM 1106(f)(6). To establish plain error warranting relief, appellant has the burden of making "'some colorable showing of possible prejudice.'" *See United States v. Wheelus*, 49 M.J. 283, 288 (1998) (quoting *United States v. Chatman*, 46 M.J. 321, 323 (1997)). We find that appellant has made no such showing.

Although the SJAR tabular summary of charges, pleas, and findings included findings of guilty for two specifications that had been dismissed, the members were properly instructed regarding the charges and specifications they were to consider in their deliberations on sentence. Therefore, the adjudged sentence presented to the convening authority for his action had been

---

[4] Appellant also notes that the SJA erred in reporting that another specification of recklessly endangering another by throwing a knife, in violation of Article 134, UCMJ, had been dismissed by the judge upon motion by trial defense counsel at the close of the government's case, because the evidence was insufficient to sustain a conviction. In actuality, the judge granted a motion for a finding of not guilty of this specification. We view this error as of no consequence.

properly rendered.

The SJAR went on to advise the convening authority of matters that he should consider regarding clemency. This portion of the SJAR stated that appellant had "*on two occasions . . .* aided his subordinates in illegally accepting shrimp during law enforcement boardings." (Emphasis added.) The two shrimp-related convictions that properly remained after the judge's dismissal for unreasonable multiplication indeed addressed two separate occasions. Thus, any possible impression that the convening authority might have had from the SJAR findings table that there had been more than two such occasions should have been negated. This narrative portion of the SJAR also noted that the other specification that had been dismissed, conspiring to misuse his wife's credit card, was "less serious in nature."

Considering this advice; the nature of convictions that were properly reported; *viz.*, misprision and accessory in the wrongful acceptance of shrimp, displaying sexually graphic images to subordinates in the workplace, and misuse of a government credit card; and the sentence that was actually imposed, we are not persuaded that there is even a remote possibility that the convening authority would have acted differently had the SJAR reported the dismissal of the two specifications for sentencing purposes. Appellant has therefore not made a "colorable showing of possible prejudice."

IV

Appellant contends that the Government failed to prove that his failure to maintain sufficient funds to cover a check he had written was "dishonorable."

Conviction under Article 134, UCMJ, for writing a bad check is conditioned on the conduct of the accused after writing the check. The subsequent failure to place or maintain sufficient funds to cover the check must have been "dishonorable." MCM Pt. IV, ¶ 68.b.2. (2000 ed.). "Mere negligence in maintaining one's bank balance is insufficient . . . the accused's conduct must reflect bad faith or gross indifference. . . ." MCM Pt. IV, ¶ 68.c. (2000 ed.). Paragraph 68c incorporates the principles of paragraph 71, dealing with Article 134, UCMJ, offenses for dishonorably failing to pay debt, for evaluating the conduct of an accused in worthless check cases:

> More than negligence in nonpayment is necessary. The failure to pay must be characterized by deceit, evasion, false promises, or other distinctly culpable circumstances indicating a deliberate nonpayment or grossly indifferent attitude toward one's just obligations. . . . The length of the period of nonpayment . . . may tend to prove that the accused's conduct was dishonorable, but the court-martial may convict only if it finds from all of the evidence that the conduct was in fact dishonorable.

MCM Pt. IV, ¶ 71.c. (2000 ed.).

The record in this case discloses that the finding of dishonorable conduct to support the conviction for this charge was based entirely on the period of time that elapsed after appellant had apparently been notified that his check bounced until it was finally paid, through offset of his pay. Trial counsel's closing argument focused entirely on evidence suggesting appellant's knowledge that his check had bounced.

In *United States v. Gardner*, 35 M.J. 300 (CMA 1992), the command legal officer had counseled the appellant regarding his debts. The appellant had signed a document that recited the past due debt, the availability of financial assistance, and his understanding that failure to take corrective action could result in disciplinary proceedings. Subsequently, the appellant still failed to pay. Nevertheless, the Court held that the evidence in that case was legally insufficient to prove that the appellant's failure to pay was dishonorable. The Court noted that there was no evidence of deliberate nonpayment or of grossly indifferent attitude toward the debt, and that the evidence showed only a failure to make timely payments. We note the same deficiencies in the instant case regarding Appellant's failure to satisfy his check.

In *Gardner*, the Court stated that "[w]here prosecution is based on the length of time a debt has been unpaid . . . 'Other circumstances are required show that the length of time is attributable to guilty rather than innocent causes. . . . A finding based on that single equivocal circumstance cannot stand.'" *Id.* at 301, quoting *United States v. Cummins*, 9 USCMA 669, 674, 26 CMR 449, 454 (1958).

In the instant case, the evidence, viewed in a light most favorable to the prosecution, showed only that Appellant "was provided the required written due notice [sic] concerning dishonored check(s) cashed at AAFES exchange(s)" sometime prior to 30 July 2000, and that, sometime in December 2000, he was informed that the full amount of the check and the associated administrative charge would be deducted from his 15 December 2000 pay. No evidence was presented concerning appellant's financial situation or his conduct regarding the check subsequent to its issuance. In these circumstances, we view *Gardner* as controlling, and hold that the evidence was legally insufficient to prove that the appellant's failure to pay was dishonorable.

V

Lastly, appellant complains that an unsuspended bad-conduct discharge is inappropriately severe in this case. We consider this assignment of error in conjunction with reassessing the sentence in light of our reversal of appellant's conviction for dishonorable failure to maintain sufficient funds to cover a check.

Appellant's most egregious offenses in this case are the two instances in which he abetted his subordinates in transporting and avoiding detection of wrongfully obtained shrimp. These shrimp were accepted from commercial fishermen during the course of Coast Guard law enforcement boardings. Not only was appellant personally involved in this behavior, he was also the Executive Petty Officer of the station, and therefore the direct supervisor of all the other individuals involved. For these two violations alone, appellant could have received a dishonorable discharge, forfeiture of all pay and allowances, and confinement for four years.

We have reviewed the record in accordance with Article 66, UCMJ. Upon such review, we have determined that the finding of guilty of specification three of additional charge four must be set aside and the specification dismissed for failure of proof. Accordingly, that finding of guilty is set aside and the specification is dismissed. The remaining findings of guilty approved below are correct in law and fact and are affirmed. Upon reassessment, we are convinced that, if the trial court had been confronted at sentencing with only the findings of guilty that we have affirmed, it would not have adjudged a sentence less than the one before this Court. Moreover, on the basis of the entire record, we have determined that this sentence should be approved. Accordingly, the sentence, as approved below, is affirmed.

BAUM, Chief Judge concurs.

BRUCE, Judge, concurring in part and dissenting in part.

### I. Challenged Conviction for Displaying Images of Bestiality

I agree with the court's rationale for rejecting Appellant's challenges to the conviction for showing images of bestiality to members of the crew at Station Galveston, to the prejudice of good order and discipline. As an alternative rationale, I would reject the challenges because the specification alleged a simple disorder under Article 134, UCMJ, either on its face or as a lesser included offense of the offense charged. *United States v. Fuller,* 54 M.J. 107 (2000); *United States v. Augustine,* 53 M.J. 95 (2000); *cf. United States v. Bivens,* 49 M.J. 328 (1998)(affirming conviction for a "closely related" and less severe offense).

The Government may have been trying to allege a breach of custom of the service in accordance with MCM Pt. IV, ¶ 60.c.2.b. (2000 ed.). If that is the case, the Government failed, at trial, to introduce sufficient evidence to sustain such a conviction, because there was no evidence of any custom that was allegedly breached by Appellant.

Nevertheless, the specification and the evidence presented at trial fully support a conviction for disorderly conduct. MCM Pt. IV, ¶ 73 (2000 ed.). The Government did prove beyond a reasonable doubt that Appellant's conduct, in showing images of bestiality to other members of his unit, affected the peace and quiet of some of the individuals who witnessed it, and disturbed them and provoked them to resentment. *Id.* at ¶ 73.c.2.

There can be no doubt that military members like the Appellant are on notice that disorderly conduct is an offense under the UCMJ, because the offense is published in the Manual for Courts-Martial. *Id.* The model specification for alleging disorderly conduct indicates that the specification should state that the accused was disorderly. *Id.* at ¶ 73.f. In this case, the specification instead described Appellant's conduct—displaying images of bestiality to members of the crew at Station Galveston. I find this to be an adequate substitute for the conclusory allegation that Appellant's conduct was disorderly. The guidance in MCM Pt. IV, ¶ 60.c.6.a. (2000 ed.), states that a specification need not expressly allege that the conduct was "a disorder or neglect."

If, as it appears, the Government was attempting to charge a greater offense under Article 134, UCMJ—a breach of a custom of the service—but only proved the lesser included offense of disorderly conduct, the specification was also sufficient for that purpose. The guidance in MCM Pt. IV, ¶ 60.c.6.c. (2000 ed.), states that for an offense not listed in the Manual, such as a breach of a custom of the service, "a specification not listed in this Manual may be used to allege the offense."

For an Article 134, UCMJ, clause 1, offense there are basically only two elements: "(1) That the accused did or failed to do certain acts; and (2) That, under the circumstances, the accused's conduct was to the prejudice of good order and discipline in the armed forces . . . ." MCM Pt. IV, ¶ 60.b. (2000 ed.). To the extent that the challenged specification alleged an offense other than disorderly conduct, it did so by inferring something more serious than a simple disorder, such as a breach of a custom of the service, in the first element. In the absence of such an inference, the specification describes nothing more than disorderly conduct. Thus, if the Government was attempting to charge an offense greater than disorderly conduct, disorderly conduct was a lesser included offense of the offense charged.

The Appellant was properly convicted of disorderly conduct by displaying images of bestiality to crewmembers at his unit. His challenges to the conviction are properly rejected.

## II. Challenged Conviction for Making and Uttering a Worthless Check

Appellant was convicted of making and uttering a worthless check by dishonorably failing to maintain sufficient funds to cover the check. In reviewing that conviction, we are presented with the issue of what quantum of evidence is sufficient to establish, as a matter of law and fact, that the behavior of the accused was dishonorable. MCM Pt. IV, ¶ 68.b.4. and ¶ 68.c. (2000 ed.).

In this case, trial counsel offered essentially undisputed evidence that Appellant wrote a check, that the check was dishonored, that by the end of July Appellant was notified of the dishonored check, but that Appellant did nothing to rectify the situation until his pay was offset in December to cover the check and administrative fees. Additionally, the evidence shows that the dishonored check was for $91.13, that Appellant was entitled to receive monthly pay in the amount of $1,969.50, and that he was married to a Coast Guard Ensign.

There is no direct evidence of Appellant's intent at the time he wrote the check, or between the time the check was uttered and when it was dishonored. There is circumstantial evidence of bad faith or gross indifference, based on the fact that Appellant apparently had the means to maintain sufficient funds to cover the check in his checking account by virtue of his monthly income, not to mention his wife's income. His failure to rectify the situation after the check was dishonored, from July to December, does nothing to weaken whatever probative value this circumstantial evidence that Appellant acted dishonorably may have.

Appellant denied guilt and chose to rely on his presumption of innocence. The Defense did not try to justify or excuse Appellant's behavior by suggesting, for example, that he had done

everything he had the means to do to maintain sufficient funds in his checking account or that he mistakenly believed that he had sufficient money in his checking account to cover the check he wrote.

A properly instructed court-martial found the Appellant guilty. The court members were instructed that mere negligence was not sufficient to establish guilt, and that they had to find that the Appellant's behavior was dishonorable.

The majority appears to rely, to a large extent, on language from *United States v. Gardner*, 35 M.J. 300 (CMA 1992), concerning sufficiency of evidence. However, *Gardner* involves a dishonorable failure to pay a debt, rather than making and uttering a worthless check. To some extent, case law has seemed to merge the two offenses over time. This trend toward merging bad debt offenses and worthless check offenses overlooks important differences in the offenses, and it should be reconsidered. The focus of a worthless check case, such as this, ought to be on the period of time between the uttering of the check and when it was dishonored. A commentator has suggested that courts viewed the offense this way up until about 1960. Major James E. Simon, *A Survey of Worthless Check Offenses*, 14 Military Law Review 29, 54 (1961).

Major Simon states that this focus began to change with Judge Latimer's separate opinion in *United States v. Brand*, 10 USCMA 437, 28 CMR 3 (1959), and the case of *United States v. Groom*, 12 USCMA 11, 30 CMR 11 (1960). Simon, *supra* at 54-55. In those instances, the focus was expanded to consider possibly exculpatory action by the accused after his check was dishonored. In *Brand*, the accused attempted to redeem his checks before they were dishonored but was rebuffed, and then he was charged ten days after he was notified that the checks had been dishonored. *Brand*, 28 CMR at 4-6. In *Groom*, the accused redeemed his worthless checks within eighteen to thirty days from when they were written. *Groom*, 30 CMR at 13. In these cases, the Government was not required to affirmatively prove that the accused did not redeem his checks in a timely manner. Instead, the judge or the court took account of evidence that happened to show that the accused did redeem his checks in a timely manner, or tried to redeem them before they were dishonored and was charged before an unreasonable time passed after the checks were dishonored.

While consideration of exculpatory actions by an accused after his check has been dishonored is appropriate, in the absence of such exculpatory action the focus of the case should remain on the period between when the accused uttered the check and when the check was dishonored. The Government should not have to prove that after the check was dishonored the accused continued to act in bad faith or with gross indifference, in order to establish bad faith or gross indifference in the period between when the check was uttered and when it was dishonored. The Government should not have to address the accused's actions after his check has been dishonored, unless some evidence suggests that the accused's actions after his check was dishonored are probative of his lack of bad faith or gross indifference. Here, there was no such evidence.

In this case, the evidence does not show that Appellant attempted to redeem his check before it was dishonored or that he redeemed it within a reasonable time after he received notice of the dishonored check. Appellant received notice toward the end of July, but did nothing.

Eventually, his pay was offset in December. Unlike Brand and Groom, who made some effort to cure their failures to maintain sufficient funds, the evidence in this case does not show any such effort on the part of Appellant. Therefore, there is nothing to undermine the Government's circumstantial evidence that Appellant acted in bad faith or with gross indifference.

In my view, the majority has misconstrued the Government's case, and focused on facts that are not relevant. The majority focuses on the length of time between when Appellant was notified of the dishonor of his check and the time that his pay was offset to satisfy the check. The majority asserts that the Government's case "was based entirely on the period of time elapsed after appellant had apparently been notified that his check bounced until it was finally paid . . . ." Slip Opinion at 10. They then cite *Gardner,* for the proposition that "[w]here the prosecution is based on the length of time a debt has been unpaid . . . 'Other circumstances are required to show that the length of time is attributable to guilty rather than innocent causes . . . ." *Id.*

If this were a bad debt case, such a focus might be correct. However, this is a worthless check case. This is not a case based on failure to pay a debt from July to December. The evidence shows that Appellant did not place sufficient funds in his account to cover the $91.13 check after he uttered it, despite receiving monthly pay of $1,969.50, not to mention whatever income his wife received as a Coast Guard Ensign. This is sufficient, as a matter of law, to show that Appellant's failure to maintain funds was a result of either gross indifference or bad faith. Moreover, I am convinced beyond a reasonable doubt that Appellant's failure to maintain funds was dishonorable. Accordingly, I would affirm the conviction for making and uttering a worthless check by dishonorably failing to maintain sufficient funds to cover the check, and I respectfully dissent.



For the Court,


Roy Shannon, Jr.
Clerk of the Court