# UNITED STATES COAST GUARD COURT OF CRIMINAL APPEALS

## UNITED STATES

v.

### Avignone F. HUGHEY
### Chief Yeoman (E-7), U.S. Coast Guard

### CGCMG 0279
### Docket No. 1363

### 27 August 2013

General Court-Martial convened by Commander, Coast Guard Pacific Area.  Tried at Alameda, California, on 27 June - 1 July and 11 July 2011.

| | |
|---|---|
| Military Judge: | CAPT Michael E. Tousley, USCG |
| Trial Counsel: | LT Bryan R. Blackmore, USCGR |
| Assistant Trial Counsel: | LT Luke R. Petersen, USCG |
| Defense Counsel: | LT Jeanne W. Murray, JAGC, USN |
| Assistant Defense Counsel: | LT Andrew J. Hofland, JAGC, USN |
| Appellate Defense Counsel: | LT Jonathan C. Perry, USCGR |
| | LT Cara J. Condit, USCG |
| Appellate Government Counsel: | LT Frances S. Johnson-Gillion, USCGR |

### ON RECONSIDERATION
### BEFORE
### McCLELLAND, McGUIRE & JOHNSON
Appellate Military Judges

McCLELLAND, Chief Judge:

Appellant was tried by general court-martial composed of officer members.  Contrary to his pleas, Appellant was convicted of one specification of aggravated sexual contact and three specifications of wrongful sexual contact, in violation of Article 120, Uniform Code of Military Justice (UCMJ); three specifications of assault consummated by battery and one specification of simple assault, in violation of Article 128, UCMJ; one specification of housebreaking, in violation of Article 130, UCMJ; and two specifications of unlawful entry, one specification of statements to the prejudice of good order and discipline in the armed forces, and one specification of being drunk and disorderly, all in violation of Article 134, UCMJ.  The court

sentenced Appellant to confinement for sixty days, reduction to E-3, and a bad-conduct discharge. The Convening Authority disapproved the findings of guilty for unlawful entry and for being drunk and disorderly, and dismissed those specifications. The Convening Authority approved the sentence.

Before this court, Appellant assigned the following errors:

I. Appellant's due process rights were violated based on the Government's excessive post-trial delays.

II. This court should consider the unreasonable and unexplained post-trial delay in determining the sentence that should be approved under Article 66(c).

III. Improper witness sequestration and witness conduct resulted in prejudice and unfair trial due to cumulative effect of the errors.[1]

On 3 April 2013, this Court rejected the third issue, granted a small measure of sentence relief for post-trial delay (reducing confinement from sixty to thirty days), and *sua sponte* dismissed a specification under Article 134, UCMJ, for legal insufficiency, while affirming the remaining findings of guilty. The Government moved for reconsideration on the *sua sponte* issue, and we granted the motion on 30 May 2013. Upon such reconsideration, we affirm our previous decision. The opinion of 3 April 2013 is withdrawn and replaced with the present opinion.

**Witness conduct**

Appellant complains that government witnesses discussed their testimony in the witness holding area during the trial, despite the military judge's direction not to discuss their testimony. Appellant's only support for this complaint is that, according to a defense witness, the prosecutrix of the most serious charges encouraged the other witnesses to "tell them everything you know." This is far from showing that the witnesses discussed the case or colluded on their testimony. Further, the members heard the defense witness's testimony on the matter and were able to consider whether it might have affected the other witnesses' testimony. No error occurred on this matter. Appellant also complains that the testimony of KC, a government

---

[1] This error was assigned pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982).

witness, was improperly influenced by SL, another government witness. Examination of this complaint reveals it to be wholly without merit.

There was no error as to either of these witness matters, much less any cumulative error.

**Post-trial delay**

Appellant urges us to grant sentence relief on account of unreasonable post-trial delay in referral of his case to this Court.

The Convening Authority took action on 6 November 2011. The record was referred to this Court on 1 February 2012, but was rejected because of a defect in the record. It was referred again on 24 February 2012, 110 days after the Convening Authority's action.

The Court of Appeals for the Armed Forces (CAAF) applies "a presumption of unreasonable delay that will serve to trigger the *Barker* four-factor analysis where the action of the convening authority is not taken within 120 days of the completion of trial [and] where the record of trial is not docketed by the service Court of Criminal Appeals within thirty days of the convening authority's action." *United States v. Moreno*, 63 M.J. 129, 142 (C.A.A.F. 2006). The *Barker* four-factor analysis comprises consideration of the following four factors to determine whether post-trial delay constitutes a due process violation: "(1) the length of the delay; (2) the reasons for the delay; (3) the appellant's assertion of the right to timely review and appeal; and (4) prejudice." *Id.* at 135 (citing *Barker v. Wingo*, 407 U.S. 514, 530 (1972)).

Appellant claims a due process violation, and the delay in referral is sufficient to raise the presumption under *Moreno*. Referral to this Court initially occurred eighty-seven days, and ultimately 110 days, after convening authority action – well beyond the thirty-day period prescribed by *Moreno*. The Government offers no explanation for the initial delay.

We have previously called the period between the convening authority's action and commencement of appellate review relatively insignificant. *See, e.g.*, *United States v. Matako*, No. 1345 (C.G.Ct.Crim.App. Mar. 20, 2012); *United States v. Bernard*, 69 M.J. 694, 700

(C.G.Ct.Crim.App. 2010), *vacated on other grounds*, 70 M.J. 355 (C.A.A.F. 2011). The first and second *Barker* factors weigh against the Government, but not strongly.

Appellant did not assert the right to timely referral. The third *Barker* factor does not weigh against the Government.

Concerning the fourth factor, Appellant claims prejudice based specifically on inability to find employment, which he attributes to non-receipt of Form DD214. However, he offers no independent evidence to support this claim, and thus has not established prejudice. *See United States v. Bush*, 68 M.J. 96, 101 (C.A.A.F. 2009) ("In most cases, the appropriate source of information pertaining to the hiring decisions of a potential employer will be a representative of the potential employer itself."). This factor does not weigh against the Government.

More broadly, as to the potential prejudice from a delay in referral, the ostensible significance of a delay in referral to this Court is that it might result in delay of our decision. If other cases were docketed before this case despite convening authority action taking place after convening authority action in this case, then the decision in this case might conceivably be delayed to a date beyond when it might otherwise have occurred, although delay of the decision is not a foregone conclusion. In fact, there were two cases in which convening authority action occurred after such action in this case but the cases were docketed before it.[2] Delay of this decision, if any, was minimal.

In the absence of prejudice, delay must be egregious to warrant a finding of a due process violation. *United States v. Toohey*, 63 M.J. 353, 361-62 (C.A.A.F. 2006). For example, the convening authority's action in *Toohey* took place 644 days after the date of sentence, and the court of criminal appeals issued its decision 2,240 days (more than six years) after the date of sentence. *Id.* at 357. In another example, 1,303 days from sentencing to court of criminal

---

[2] *United States v. Martin* was withdrawn from appellate review. *United States v. Caulfield* was decided on 16 July 2013, almost fifteen weeks after our initial decision in this case.

appeals decision was found to constitute a denial of due process in the absence of prejudice.[3] *United States v. Gosser*, 64 M.J. 93, 97-99 (C.A.A.F. 2006). The delay in our case is far from egregious. Considering all factors, we find no due process violation based on post-trial delay.

We turn now to Appellant's argument that we should grant sentence relief under *United States v. Tardif*, 57 M.J. 219 (C.A.A.F. 2002), which held that we may grant relief for excessive post-trial delay without a showing of prejudice. *Id.* at 224. Upon finding unreasonable and unexplained post-trial delay, this Court may consider such delay, along with all the other facts and circumstances, in exercising its responsibilities under Article 66(c), UCMJ. *Id.* We have granted such relief in several cases in the past few years. Appellant calls our attention to *United States v. Matako*, No. 1345 (C.G.Ct.Crim.App. Mar. 20, 2012), where we granted relief for unreasonable delay on account of 144 days to complete convening authority action (twenty-four days beyond the *Moreno* standard) and sixty-four days from convening authority action to referral to this Court (thirty-four days beyond the *Moreno* standard).

We find the unexplained period of eighty-seven days between the Convening Authority's action and referral of this case unreasonable, warranting some relief. We will consider the delay when conducting our sentence appropriateness review under Article 66, UCMJ.

### Specification alleging prejudice to good order and discipline

The remaining specification under Article 134 of which Appellant was found guilty alleges in pertinent part as follows:

> In that Chief Yeoman Hughey . . . did, onboard USCGC HAMILTON (WHEC-715), on or about 26 March 2010, tell [Petty Officer Third Class EP], "You can't do anything to me because I'm a chief," or words to that effect, and tell [Fireman AF], "You won't get into trouble because I handle the Captain Masts," or words to that effect, which statements were prejudicial to good order and discipline in the armed forces.

Notable in this specification is the absence of any word of criminality such as "wrongfully." The fact that certain conduct is prejudicial to good order and discipline does not,

---

[3] This included a period of 141 days from convening authority action to docketing at the court of criminal appeals, which was one of two periods the Court of Appeals for the Armed Forces labeled extreme, implying that one such period by itself would not necessarily rise to the level of "facially unreasonable."

in itself, make the conduct criminal and punishable under Article 134. For example, dating a crewmate's recently estranged spouse could be prejudicial to good order and discipline, but is not necessarily criminal.

"Basic to alleging and proving a punishable offense is the existence and identification of a wrongful act or acts that meet the requirements of either or both of the clauses [of Article 134]." *United States v. Hester*, 68 M.J. 618, 620 (C.G.Ct.Crim.App. 2010) (quoting *United States v. Henderson*, 32 M.J. 941, 947 (N.M.C.M.R. 1991)). A specification under Article 134 must include words of criminality to be legally sufficient. Rule for Courts-Martial (R.C.M.) 307(c)(3) Discussion (G)(ii), Manual for Courts-Martial, United States (2008 ed.); *United States v. Vaughan*, 58 M.J. 29, 35 (C.A.A.F. 2003); *United States v. Brice*, 17 USCMA 336, 38 C.M.R. 134, 138-39 (1967) (citing *United States v. Julius*, 8 USCMA 523, 25 C.M.R. 27 (1957)); *see also United States v. Daly*, 69 M.J. 549, 552 (C.G.Ct.Crim.App. 2010) ("It is certainly true that a word of criminality such as 'wrongfully' is essential to an adequate specification."), *rev'd on other grounds*, 69 M.J. 485 (C.A.A.F. 2011); *Hester*, 68 M.J. at 621 n.4.

The Government contends that the specification alleging statements to the prejudice of good order and discipline does not require the word "wrongful," and thus the specification states an offense; and further that Appellant was on notice that his conduct was wrongful because it was prejudicial to good order and discipline and contrary to customs of the service.

Specifications that are first challenged after trial are viewed with greater tolerance than those challenged at trial. *United States v. Watkins*, 21 M.J. 208, 209 (C.M.A. 1986).

The Government argues that *United States v. Davis*, 26 M.J. 445 (C.M.A. 1988) precludes a holding that the absence of "wrongfully" or any other word of criminality in the specification is a fatal defect. The Government also argues such a holding would be contrary to prior decisions of this court in *United States v. Nygren*, 53 M.J. 716 (C.G.Ct.Crim.App. 2000), and *United States v. Farence*, 57 M.J. 674 (C.G.Ct.Crim.App. 2002).

In *Davis*, the male accused was charged with two specifications of wearing women's clothing, including nylon stockings, bra, nail polish, and the like, "to the prejudice of good order and discipline and of a nature to bring discredit upon the Armed Forces." *Davis*, 26 M.J. at 447. The appellant argued that the specifications were fatally defective because they lacked words of criminality. *Id.* The Court of Military Appeals rejected the argument, opining that "the 'wrongfulness' of the conduct consisted of its threat to good order and discipline and its discredit to the armed forces," and declaring that the allegations of those two elements made the specifications legally sufficient. *Id.* at 448-49. The court observed, "The particular facts and surrounding circumstances recited in the specifications [which included the specific locations of the charged conduct] in this case describe conduct on a military installation which virtually always would be prejudicial to good order and discipline and discrediting to the Armed Forces." *Id.* at 449.

The latter observation strongly suggests that the holding is limited to the facts of that case. In the present case, the specification includes nothing about the specific location or other circumstances.[4] *See Vaughan*, 58 M.J. at 35 (n. 4).

Further, we do not believe the *Davis* holding survives the recent cases of *United States v. Fosler*, 70 M.J. 225 (C.A.A.F. 2011), and *United States v. Ballan*, 71 M.J. 28 (C.A.A.F. 2012). In *Fosler*, where no "terminal element" was alleged in the Article 134 adultery specification at issue, the court held that neither the allegation of adulterous conduct nor the word "wrongfully" implied a terminal element.[5] *Fosler*, 70 M.J. at 230-31. Surely the converse is also true: a terminal element does not imply the word "wrongfully." Likewise, in *Ballan*, the court held that a terminal element was not necessarily implied "from nothing beyond allegations of the act or failure to act itself." *Ballan*, 71 M.J. at 33. Similarly, criminality surely is not necessarily implied from a bare allegation of an act itself.[6] After these decisions, inclusion of the language

---

[4] The specification includes the general location of the events alleged as being aboard USCGC HAMILTON, but the evidence shows that the events took place ashore.

[5] "Prejudice to good order and discipline" and "discredit upon the Armed Forces" are commonly called "terminal elements" of Article 134.

[6] In contrast to the case at bar, in *Vaughan*, the specification included several details as well as a terminal element. *United States v. Vaughan*, 56 M.J. 706, 707 (A.F.Ct.Crim.App. 2001). The Court of Appeals for the Armed Forces relied on some of those details to uphold the conviction. *Vaughan*, 58 M.J. at 35.

"which statements were prejudicial to good order and discipline in the armed forces" in our case does not obviate the need for separate language of criminality.

As for the Coast Guard cases cited by the Government, in *Nygren*, the specification alleged certain acts "in violation of Section 125.07 of the Wisconsin Statutes." This Court held that the allegation of violation of state law constitutes an allegation that the appellant's acts were unlawful. *Nygren*, 53 M.J. at 717. Thus, *Nygren* does not support the notion that words of criminality are unnecessary.

The other Coast Guard case cited by the Government, *Farence*, involved a specification alleging display to subordinates of pornographic images depicting bestiality, with no word of criminality; the specification was upheld, citing *Davis*. *Farence*, 57 M.J. at 676-77. If the *Davis* holding has lost much or all of its force, the *Farence* holding is equally impaired. Further, although one can understand the Court of Military Appeals, in *Davis* in 1988, calling cross-dressing in certain circumstances "virtually always . . . prejudicial to good order and discipline," and it can reasonably be asserted that showing images of bestiality to subordinates, as in *Farence*, would virtually always be prejudicial to good order and discipline, the same cannot be said of the acts alleged in the present case.[7] The specification alleges no facts beyond the two statements by Appellant, and thus does not allege circumstances making the statements virtually always prejudicial to good order and discipline, or any other allegation of criminality.

If we approved the absence of a word of criminality from the specification at issue here, it would mean that use of the words spoken by Appellant would be criminal even if used in jest. As the *Fosler* court said, "'Wrongfully' is a word of criminality and . . . words of criminality speak to mens rea and the lack of a defense or justification." *Fosler*, 70 M.J. at 230-31 (citing *United States v. King*, 34 M.J. 95, 97 (C.M.A. 1992)). Inclusion of "wrongfully" in the specification would express the possibility of justification by joke, First Amendment defense, or other possibilities. To allow a conviction of this specification lacking a word of criminality

---

[7] *Farence* puts forward a much broader reading of *Davis* than is supportable, ignoring *Davis*'s "virtually always . . . prejudicial to good order and discipline" language. *Farence* also implies, at first glance, that *Brice* supports its interpretation of *Davis*, when in reality the *Farence* court is simply attempting to show that *Davis* has placed a new gloss on *Brice*.

would seem to allow for no such possibility of innocence, or perhaps would indicate that an accused had the burden of coming forward with and of proving such a defense or justification, a proposition that, at best, sits uneasily with the presumption of innocence. It certainly cannot be said, as was said in *Davis*, that the particular facts and surrounding circumstances recited in the specification describe conduct that virtually always would be prejudicial to good order and discipline. *Davis*, 26 M.J. at 449.

In short, we hold that the specification is defective because it lacks any language of criminality.

Having concluded that the specification is defective, we need not address the Government's second argument, which concerns the requirement that a servicemember must have notice that charged conduct is punishable (*see Parker v. Levy*, 417 U.S. 733 (1974)). However, we will comment on it. The argument is that Appellant was on notice that his conduct was wrongful because it was prejudicial to good order and discipline and because it was contrary to customs of the service. The customs articulated by the Government are: (1) unless stated otherwise, rules and regulations apply to senior members as well as junior members, and a senior member may not hide behind his rank to avoid punishment for infractions; (2) servicemembers are to follow appropriate legal authorities and adhere to the chain of command; (3) a chief petty officer holds both himself and his subordinates to a high standard of conduct. The Government's idea apparently is that Appellant's statements expressed attitudes contrary to these customs.

Putting aside the first part of the Government's argument, which essentially duplicates the Government's first argument, we believe the service customs the Government posits, although they seem plausible, are too broad and nonspecific to provide a basis for criminal liability. *See United States v. Vaughan*, 58 M.J. 29, 31 (C.A.A.F. 2003) (due process requires both fair notice that an act is forbidden and subject to criminal sanction and fair notice as to the standard applicable to the forbidden conduct). Compare the Government's proposed customs with the customs discussed in *Vaughan* (custom against child neglect); *United States v. Guerrero*, 33 M.J. 295 (C.M.A. 1991) (custom against cross-dressing); and *United States v. Johanns*, 20 M.J. 155 (C.M.A. 1985) (custom against fraternization between officer and

enlisted). We also question whether it is appropriate to charge a person for expressing an attitude contrary to such a broad, nonspecific custom.[8]

As already stated, we hold that the specification is defective because it lacks any language of criminality. A specification that is defective because it fails to allege an element of an offense, if not raised at trial, can be tested for plain error. *United States v. Ballan*, 71 M.J. 28, 34 (C.A.A.F. 2012). Arguably the same is true of a specification that fails to allege criminality. However, this Court may choose not to test for plain error, that is, not to apply waiver[9] to a defect not raised at trial, and may decide that a defect is such that findings of guilty do not merit approval under Article 66(c), UCMJ. *United States v. Claxton*, 32 M.J. 159, 162 (C.M.A. 1991). We choose not to test for plain error in this case. With due regard for Article 59(a), we will set aside the finding of guilty of Charge V Specification 3[10] and dismiss the specification and charge. *See* R.C.M. 907(b)(1)(B).

We are certain that the sentence would not have been different absent this specification. *See United States v. Sales*, 22 M.J. 305, 307 (C.M.A. 1986).

## Decision

We have reviewed the record in accordance with Article 66, UCMJ. Upon such review, the findings of guilty of Charge V and its Specification 3 are set aside; Charge V and its Specification 3 are dismissed. The remaining findings are determined to be correct in law and fact and, on the basis of the entire record, should be approved. Accordingly, those findings of guilty are affirmed. In view of our finding of unreasonable post-trial delay, only so much of the sentence as provides for confinement for thirty days, reduction to E-3, and a bad-conduct discharge is affirmed.

Judges MCGUIRE and JOHNSON concur.

---

[8] It may be permissible to charge such conduct under Article 133, but Appellant is not a commissioned officer and therefore is not subject to Article 133.

[9] The more correct term in both *Claxton* and this case would be forfeiture. *See United States v. Gladue*, 67 M.J. 311 (C.A.A.F. 2009).

[10] Originally called Charge VI Specification 5, but renamed at trial because of pre-arraignment dismissal of other charges and specifications.



For the Court,


L. I. McClelland
Chief Judge